Anderson, J.
The appellees are a body corporate, organized in November 1867, under the acts of May 29, 1852, and January 31, 1867, as a building fund association. The appellant was a member thereof, holding ninety shares of stock therein ; fifty in his own name, and forty in the name of his brother, E. A. D. White ; seventy of which were redeemed by the association, within the first seven months of its organization, for the sum of $4,283. The remaining twenty shares were sold to the institution, and cancelled.
The appellant alleges in his bill, that the money was advanced to him as a loan, and that his shares were assigned to the association as a pledge or security for the same ; and that upon the final division he is entitled to his shares, subject to a deduction for the advances made on them, which he understands will be contested by the appellees ; and, therefore, he asks that the matter may be determined by the court, and his rights in the premises adjudicated. The answer of the defendants to this allegation does not clearly reveal the ground on which they stand. But in the argument the pretension of the appellant was earnestly opposed. And it is plainly negatived by the twenty-third article of the association, which provides, that the association is to cease when the money *242 in hand and due is sufficient to pay two hundred dollars on eac^ unredeemed share to the holder thereof, over and above all liabilities of the association. There is no provision for any payment on the redeemed shares. But as 800Q as ^ere is money enough in hand and due, after paying debts and liabilities, to pay two hundred dollars on each unredeemed share, all further contributions to increase the capital stock are to cease; the holders of the unredeemed shares are to be paid, and the association to be dissolved. The deeds of trust are to be released where the grantors have complied with their requirements, but no money is required to be paid on the redeemed shares. Eo provision is made for it, and none intended ever to be made; for the association, after dividing all the fund accumulated amongst the unredeemed shares, is dissolved, and ceases to be. Evidently the parties who mutually agreed to form this association, and entered into these articles, did not intend, as now claimed by the appellant, that the stockholder who had received payment for his shares in advance should, at the final division, come in for a further payment.
If this article is within the scope and authority of the statute, the transactions of the parties in conformity to it cannot be gainsaid. I was at first of opinion that it was irreconcilable with section 7 of the statute before referred to. That section is in these words: “Every such association, unless sooner dissolved by a vote of a majority of the stockholders, shall continue in being until the fund accumulated, including shares redeemed, and all property, money and other effects, shall amount to such a sum as will enable the company to divide on each share a sum equal to the par or ultimate value of the .shares agreed upon in the articles, and no longer; and in such estimate the redeemed shares shall be estimated at their par value.” The articles require a dividend to be made amongst the holders of the unredeemed shares when the fund is sufficient to divide two hundred *243 dollars a share amongst them. This section of the statute requires division to be made only when the fund is sufficient to pay on “each share” (which meaus redeemed and unredeemed) two hundred dollars, and requires the association to continue in being until then, “and no longer.” The other requires the association o * to continue in being until the fuud is sufficient to divide two hundred dollars amongst the unredeemed shares only, and requires it to be paid to the holders of them, and that the association shall then be dissolved. The one contemplates and requires that the association shall terminate when the fund is sufficient to divide two hundred dollars amongst all the shares, redeemed and unredeemed. The other requires the dissolution when the fund is sufficient only to divide two hundred dollars amongst the unredeemed shares, and requires that the whole of it shall be divided amongst the holders of the unredeemed shares. How can they be reconciled ?
The difference is only apparent. The statute provides that, in ascertaining the sufficiency of the fund for division, the redeemed shares shall be computed at their par or ultimate value, as a part of it. The articles do not include them in the fund for division. The statute treats them as the property of the association, having been paid for in advance, and therefore as assets. The article ignores them, as having been bought in by the association and sunk—merged in its capital stock, which consists of “ money in hand and due the association; ” and therefore provides that it shall be dissolved,, when “there is sufficient money in hand and due the association for the purposes of division,” &c. So that, in fact, the condition of the association is precisely the same when it is to be dissolved, either by the statute or by the articles—that is, when its actual fund is sufficient to divide two hundred dollars on the unredeemed shares. To illustrate it, suppose there were twenty shares, ten of them redeemed, and the remaining ten unredeemed. *244 The fund required to divide two hundred dollars on each share, redeemed and unredeemed, is four thousand dollars. But according to the provision of the statute, two thousand dollars of that fund consists of the estimated value of the redeemed shares, which leaves two thousand dollars, which is only sufficient to pay the unredeemed shares, and there is, in fact, nothing provided by the statute to pay the redeemed shares. And there was no occasion for it, as they had already been paid in anticipation.
This view also comports with the declaration of the purposes of the act of incorporation in the first section : to accumulate “a fund which will enable its respective members to purchase houses and lots,” &c ; “and for the further purpose of distributing among the"members who do not receive aid by advances on their shares, for the object aforesaid, their proper dividends of the funds so accumulated in money.” It seems to have been contemplated, that one class of stockholders would be aided by the use of money, in acquiring and preserving homesteads, whilst the other class was to receive a dividend of the fund accumulated. By this construction these sections are in harmony one with the other, and both are in harmony with the articles of association. We are of opinion, therefore, that the appellant, by the assignment of his shares for the sums paid him by the association, parted with his property in them, and that he is not entitled to receive a dividend upon them in the division of the assets of the association; that the redemption of his shares was in conformity with the requirements of the statute, and the articles of association; and that, when the assets of the association, exclusive of the redeemed shares, are sufficient, after payment of debts and liabilities, to pay on each unredeemed share, to the holder thereof, the sum of two hundred dollars, all monthly accruing demands of interest and payments on stock and fines must cease; a division of the assets be *245 made amongst the holders of the unredeemed shares; the grantors in deeds of trust, who have complied with the conditions and requirements of their deeds, released; and the association be dissolved. "Whether these conclusions will subject the advanced stockholder to onerous burdens, is a matter the opinions in relation to w'hich widely differ. It is contended on the one hand, that the institution operates very beneficially to the man who has but small means, and who is destitute of a home that he can call ’ his own, as it will enable him to acquire property in a home for himself and family, and pay for it in the course of six or eight years, at a cost very little exceeding what he would have to pay in rent for a leasehold for the same period. On the other hand, it is contended, that the exactions operate as a grinding oppression on those who find themselves unable to meet the requisitions.
Which of these opinions is correct, we will not undertake to say. If the transactions and dealings of this association with its members are warranted by statute, and that statute is warranted by the constitution, though they may operate harshly and oppressively, it is not the province of the courts to relieve. The fault is in the law, which the legislature alone can alter; or in the improvidence of the party, which neither the legislature nor the courts can remedy. We will remark, however, that such institutions have existed in England for many years, and in America from a period long anterior to the first recited statute. And it would seem that they must have been regarded as useful institutions where they have been so long sustained. But we will remark further, that whether this association proves beneficial or not to the advanced stockholder, there is an exhibit it makes in this case, which shows very great inequality between the two classes of stockholders; and that is, whilst the appellant has received upon an average only ^61.90 a share for his stock, the unadvanced stockholder *246 will receive $200 a share for his; a difference on each share of $138. It is true that the former receives pay'ment Avance > but be is required to pay interest monthly upon the sum he received, until the unadvanced stockholder receives his $200; and is required to pay all the other requisitions which the unadvanced stockp0]qer jg required to pay. This inequality would not be, if redemption could be regarded as a loan and security, and the advanced stockholder, as still the owner of his Bhares of stock, subject to a charge for the sums advanced upon them. But we find that the articles of association are plainly to the contrary, and that, upon a careful scrutiny, they are supported by the statute; and we are bound to enforce the law as it is written.
As to the charge of usury in the bill, we do not think it is supported. But is not the difference between the sums paid to the advanced and uuadvaneed stockholders on their shares, a premium paid by the former, at least in part, in addition to the six per cent, interest which he is required to pay on the money which be received upon his shares of stock, and, therefore, within the prohibition of the eighth section? I was strongly inclined to that opinion. But upon a careful review of the case, the consideration that this excess which one class of stockholders receives over the others for their shares is produced by the payment of interest authorized by the eighth section, and the requisitions expressly authorized by the proviso to the prohibition, and that the seventh section requires the division to be made in a way by which these monthly payments necessarily enure to the beuefit of the unadvanced stockholder, by raising his shares of stock to the par or ultimate value, I yield my doubts, and concur with my brethren in the opinion, that it is authorized by the statute, and, therefore, cannot fall within the prohibition of the eighth section.
Hitherto we have considered the case upon the contract of redemption, and the assignment of the appellant’s *247 shares to the association, upon the hypothesis that the appellant meets the regular requisitions upon him until the association is dissolved by force of the charter. "We have now to consider it in the other aspect—that is, in a case where the association is dissolved by the vote of the stockholders, as authorized by the statute, before a dissolution by force of the charter could take place; or in a case where the appellant is in default in the payment of the regular monthly dues and fines, so that his property conveyed by the deeds of trust to secure the payment during the continuance of the association, or a part of it, has to be sold before the termination of the association.
The stockholders might desire to dissolve the association long before its regular termination by force of the statute. Suppose they had desired to dissolve the association at their next meeting after the seventy shares of appellant had been redeemed, when he had paid in only nine dollars on the share, upon which he had received 161.90; they could not do so in justice to the other members of the association, unless they could require appellant to return a part of what had been paid to him. Or suppose that, long before the accumulated fund, after paying debts and liabilities, was sufficient to divide two hundred dollars on the unredeemed shares, which is this case, the appellant stops payment, and refuses to pay up the arrearages against him, and that the board, in order to enforce payment, directs his property conveyed in trust to be sold, and his property is sold—what security has the association that he will afterwards continue to pay, in fulfilment of his solemn covenant, until the association is in condition to dissolve? "What provision is made to meet these contingencies ?
It is the agreement, evidenced by the bonds of appellant and his deeds of trust, that in either of those contingencies he will pay such sum in discharge of his obligation, and in lieu of the principal sums which had *248 been advanced to him, as shall be determined to be right and proper by the board of directors, “according to the rate at which shares may be redeeming at the time of such sale or dissolution.” And the deeds of trust require the trustees to pay such sum to the association, out of the proceeds of the sale, in addition to the arrearages on account of monthly dues and fines, which he may be owing. It is virtually an agreement that the association will take the appellant’s shares of stock, with his covenants in relation to them, and the security he offered for the fulfilment of those covenants, for the price paid; with condition that if he shall fail to fulfil his covenants, and the security has to be sold, he will pay back such sum as the referees mutually chosen shall determine to be right and proper, according to a certain specified rule or method of ascertaining it. We can perceive nothing in such an agreement that would render it unlawful, or the parties incompetent to make it.
The only remaining question is, Was it a proper case for an account? or ought the amount of appellant’s indebtedness to have been ascertained before the injunction was dissolved ? In Smith & al. v. Flint & al., 6 Gratt. 40, it was held that the sale of land should not be directed, though unquestionably chargeable in equity, until the amount of the debt is ascertained. Judge Cabell, delivering the opinion of the court, says : “ John S. Wellford, executor, has an unquestioned lien for the payment of his debt; and if the amount had been ascertained, it would have been proper to direct a sale of the land for its payment. But as the l’ecord states that it did not appear to the court what amount was due, the decree for a sale of the land for the payment of that debt was premature and erroneous.” See also Lane v. Tidball, 1 Va. R. 180.
A part of the debt for which the sale, it seems, was to be made, to wit,x$l,201.28—the balance due from the appellant on account of monthly dues and fines— *249 was well ascertained; and the deed of trust expressly authorizes a sale for any default in those payments. But the appellant alleges in his bill, and it,is not denied in the answer, that the land advertised to be sold was worth, and would sell for, vastly more than the amount so due. It was clearly competent for him to have objected to the sale of the whole tract to satisfy that sum. The trustees are the agents of both parties, and are bound to have respect to the rights and interests of both in the administration of the trust. And if the appellant had laid off a portion of the tract, and requested the trustees to sell that to satisfy the arrearage of monthly dues and fines, and their authority was limited to sell for that sum, it would have been their duty to comply with the request, unless they had reason to believe that the portion so laid off was insufficient, or that their compliance might impair or endanger the security which the deed was designed to give for his other indebtedness.
But in this case the record does not show that the appellant proposed to lay off a part or parcel of the land conveyed to be sold to satisfy this debt, or that he requested the trustees to sell in parcels. No such request having been made, and no proposition made to lay off and sell any particular portion of the land, was it required of them, as the agents of both parties, to have done so of their own motion ? The ease did not present that question for their decision.
It was not their purpose to sell only to satisfy the arrearage of $1,201.28, but the sum also which the appellant was liable to pay in lieu of the principal sums advanced to him, which was to be ascertained and determined on by the board of directors, which they are authorized by the deeds to do. For the deeds expressly require the trustees to pay that sum out of the proceeds of sale, and the balance, if any, to pay over to the *250 grantor. And we are here met by the question, Was it necessary that such sum should be ascertained before sale was made %
It was not necessary that the appellant should know the amount in order to stop the sale by its payment. He was authorized to stop the sale without paying any part of it; that is, by the payment of $1,201.28. And inasmuch as the question as to the amount due and owing on the latter account could be as well determined after as before the sale, and was not in conflict with the deeds, but seems to have been contemplated by them, and was authorized upon any default, and the determination would be equally subject to judicial supervision, whether made before or after the sale, I was inclined to think that this case did not fall within the principle of Smith v. Flint, supra, and that the sale could be made within the authority of the deeds of trust before the chosen referees had determined what sum should be paid in lieu of the principal sums advanced. But -my brethren being of opinion that the amount should have been ascertained before the sale, and as the uncertainty as to the extent of the charge upon the land might in some way have prejudiced the sale, I yield to their judgment.
The court is therefore of opinion, that the board of directors should have ascertained and determined what sum was due from the appellant in lieu of the principal sums advanced to him by the association before they made sale of the land conveyed to them, and that the decree dissolving the injunction was therefore premature and erroneous, and for this cause must be reversed.
The other judges concurred in the opinion of Anderson, J.
The decree was as follows :
This case having been heard by the court at its place *251 of session at Staunton, where it is pending, but not having been there determined, this day came on for determination here ; whereupon the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing, to be filed with the record, that the Building Fund Association, by the redemption of the appellant’s shares of stock, acquired the right of property therein; and that the assignment of them to the association, by the appellant for the price he received, was not an hypothecation for a loan, but an absolute surrender of them to the association, whereby they were sunk and •extinguished, and consequently could not entitle the appellant to participate in the final division and distribution.
The court is further of opinion, that such division and •distribution is required to be made when the accumulated fund is sufficient to pay on each of the unredeemed shares two hundred dollars, after the payment of all debts and liabilities of the association, and that the twenty-third article of the association on this subject is authorized by section seven of the statute.
The court is further of opinion, that the assignment of his shares of stock by the appellant to the association, did not release him from his covenant, as a party to the articles of association, to make his regular monthly payments on stock, and on account of fines, and that the enforcement of his said obligations is secured by his bond and deed of trust, by which also he obligates himself to pay interest at the rate of six per cent, per annum on the sums actually received, as authorized by section eight of the statute, until the termination of the association ; and that the transactions between the parties were not usurious, nor within the prohibition of the said eighth section.
The court is further of opinion, that for any default in the payment of monthly dues or fines, the trustees were authorized and required to sell, when requested by the *252 board of directors, the property conveyed to them in trust by the appellant, not only to satisfy the arrearages due, but also such sum as might be due and payable by him on account, or in lieu, of the principal sums advanced, or paid to him for his shares, to be ascertained and determined by the board of directors, who are the chosen referees of the parties for that purpose, according to the rate at which the shares may have been redeeming at the time the sale was advertised to take place ; but that such sale ought not to be made until such indebtedness was ascertained, and that, consequently, the decree dissolving the injunction, and allowing the trustees to proceed with the sale before the amount of the debt charged upon appellant’s land was so ascertained, was premature and erroneous.
It is, therefore, decreed and ordered, that for this cause, said decree be reversed and annulled, and that the appellees, The Mechanics Building Fund Association of Lexington, pay to the appellant his costs expended in the prosecution of his appeal aforesaid ; aud the cause is remanded to the Circuit court of Rockbridge for further proceedings to be had therein, in conformity with the principles of this decree ; that an account be directed to be taken by a commissioner of said court to ascertain the amount of plaintiff’s indebtedness to the association on the 26th day of April 1870, on account of arrearage of interest, monthly payments on stock aud fines, and also an account of principal sums paid to him by the association, as may be ascertained and determined by the board of directors, according to the rate at which shares were redeeming at that time, it being the time when the property was advertised to be sold, and the time when the accounts should be closed. And that said commissioner be required to report to the court thereof, with such testimony as either party may offer, bearing upon the questions submitted to him, in order to a final decree.
*253 Which is ordered to be entered on the order-book of the court here, and to be forthwith certified to the clerk of this court at Staunton, who shall enter the same on his order-book, and certify the same to the clerk of the Circuit court of Rockbridge county.
Decree reversed.