## Richmond.

CRABTREE V. OLD DOMINION BUILDING & LOAN
ASSOCIATION.

MARCH 17, 1898.

Absent, Riely and Cardwell, JJ.

1. BUILDING FUND ASSOCIATION—*Act of 1852 Repealed.*—The Act of
1852 authorizing the voluntary incorporation of Building Fund As-
sociations upon the terms prescribed thereby was an act of a gen-
eral nature, and was repealed by sec. 4202 of the Code.

2. CORPORATIONS CHARTERED BY COURTS—*Power to Charge Usurious In-
terest.*—A corporation created by a Circuit or Corporation Court,
under the provisions of sec. 1145 of the Code, cannot charge more
than the legal rate of interest for the loan or forbearance of money.
The legislature alone can grant this power.

3. BUILDING FUND ASSOCIATIONS—*Usury.*—A member of a building as-
sociation owning twenty shares of its stock, borrowed of the associa-
tion $1,000, which he secured by a transfer of his stock, and by
executing a bond in the penalty of $2,000, with condition to pay $17
per month until his stock became worth $100 per share, but not to
exceed eighty-four months. Of the $17 the sum of $5 was set apart
on the books of the Association for monthly interest, $2 for ex-
penses, and $10 for the loan fund.

*Held:* The transaction is usurious.

4. BUILDING FUND ASSOCIATIONS—*Relation of Members—Partnership—
Redemption of Stock.*—The relation of Members of a Building and
Loan Association, incorporated under sec. 1145 of the Code, is not
that of a partnership, and the redemption of stock of members by
such an association is a mere loan of money. *Silver* v. *Barnes,* 6
Bingham (N. C.), 180, *disapproved.*

5. RETROACTIVE LAWS—*Building Fund Associations—Act of March 1,
1894.*—Courts will not construe Acts of Assembly so as to give to
them a retroactive effect, unless there is something on the face of
the enactment putting it beyond doubt that such was the intention
of the legislature. The Act of March 1, 1894, with reference to

Opinion.

Building and Loan Associations, does not affect transactions of such associations which took place prior to the passage of that Act.

6. BUILDING FUND ASSOCIATIONS—*Usurious Contracts—Measure of Relief.*—In ascertaining the amount to be decreed against a borrowing member of a Building Fund Association whose contract of borrowing has been declared usurious, but who has made no payments within twelve months before suit, a balance should be struck at the date of his last payment, and no charge thereafter made for interest, dues, or fines. He should be credited by his interest payments and the withdrawal value of his stock, and a decree should be pronounced for the balance due, with interest from the date of the decree.

7. USURIOUS CONTRACTS—*Voluntary Payments—How Applied.*—Where payments have been made upon a usurious contract and the borrower himself applies the payment to the interest, or the lender so applies it with the assent of the borrower, the appropriation so made will not be disturbed, unless within one year thereafter a suit be instituted by the borrower for its recovery, or a suit be brought by the lender within that period, in which case the borrower may set it off against the demand for which he is sued. *Munford* v. *McVeigh,* 92 Va. 446, *approved.*

Appeal from a decree of the Circuit Court of Pulaski county, pronounced August 10, 1896, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*I. H. Larew,* for the appellant.

*T. L. Massie, Wm. C. Preston* and *B. Rand. Wellford,* for the appellees.

KEITH, P., delivered the opinion of the court.

The appellant filed his bill in the Circuit Court of Pulaski county, praying an injunction to the sale of a house and lot conveyed by him to Wysor and Massie, trustees, to secure to the

Old Dominion Building and Loan Association a. certain bond executed by him on the 25th day of April, 1890, for the sum of $2,000, upon which there was alleged to be due $675.37. The injunction was awarded. The bill of complaint was subsequently answered by the Association and the trustees, and upon the issues thus raised a final decree was rendered, ascertaining the amount due by the appellant, and directing the sale of his property unless it was paid within thirty days.

From this decree an appeal was allowed.

The facts to be considered are as follows: On the 25th of April, 1890, Crabtree, the appellant, took twenty shares of stock in the Old Dominion Building and Loan Association, and borrowed from it the sum of $1,000, which he secured by the surrender of his stock, and by executing a bond in the penalty of $2,000, conditioned to pay $17 monthly on said loan, and such fines as might be imposed upon him in accordance with the by-laws of the Association. The sum of $17, payable monthly, was composed of $5 interest, and 60 cents per share, which was apportioned upon the books of the company in the ratio of 10 cents per share, or $2 per month, to the expense fund, and 50 cents per share, or $10 per month, to what was known as the loan fund. These sums of $5 interest, $10 to the loan fund, and $2 to the expense fund, aggregating $17, were paid each and every month by the borrower, commencing with the date of the loan. The period within which the shares would mature—that is, would be worth $100 each—was an uncertain one, but the Association agreed with the borrowers that they should be required to make monthly payments of dues for only a period of eighty-four months, in the event that their stock had not matured within that time. It appears from this statement that, upon the money borrowed by appellant, he paid, in addition to interest, the monthly sum of $12 into the treasury of the Association. At the end of forty-two months he had paid to the company, in addition to the interest upon the sum loaned, the amount of $504, and if a debit and credit account had been kept between him and

the Association the principal of the debt would have been reduced by that amount plus the average interest upon the monthly sums thus paid. While the amount reserved .as interest upon the original loan was only six *per cent.*, that rate was charged and paid upon a constantly diminishing principal, so that, unless this transaction, by virtue of having been made with a Building and Loan Association, is to have a different rule applied to it from that applied to contracts between individuals, or between individuals and other corporations, it must be regarded as usurious; for, stripped of all disguise, it was but a loan of money from the Building and Loan Association to the appellant, for which he was required to pay a rate of interest in excess of that allowed by law.

But it is said, in the first place, that this is a Building and Loan Association chartered under the laws of the State of Virginia, and that, while it was not authorized to charge more than six *per cent.* interest as such, its members could be required, by virtue of the authority derived from its charter, to pay dues and fines to be ascertained and regulated by the by-laws of the company.

The Old Dominion Building and Loan Association was organized under a charter granted by the Circuit Court of the city of Richmond by virtue of section 1145 of the Code, by which the courts are authorized to grant a charter of incorporation to "any five or more persons who shall desire to form a joint stock company for the conduct of any enterprise or business, which may be lawfully conducted by an individual, or by a body politic or corporate," with certain exceptions named in the statute which need not be here enumerated. There was, at the date of this statute, February, 1890, no law expressly authorizing the formation of Building and Loan Associations. Such an act had been passed as early as 1852, but it does not appear in the Code of 1887, and, being a law of a general nature, was repealed by section 4202. The charter granted to the Old Dominion Building and Loan Association is subject to the gene-

ral laws of the Commonwealth. An association organized under section 1145 cannot vouch its charter to justify or excuse any violation of the law upon the subject of usury. Contracts usurious, if made by any other corporation or by an individual, are none the less usurious when made by an association acting under a charter granted by a court.

Usury is the creature of statute law, and the legislature alone can relieve against it.

It is contended by the appellee, however, that the transaction under investigation is not usurious; that the relations between the members of the Association is essentially that of partnership, and that the transactions between them do not constitute loans of money, but are, in effect, a mere agreement of partners that their joint contribution shall be advanced for the use of one or another of the members. This was the doctrine announced in *Silver* v. *Barnes*, 6 Bingham (N. C.) 180. There are notable differences between *Silver* v. *Barnes* and the case before us. One is that in that case the loans were made to members at premiums offered on competitive biddings, while here under another name—that of a loan and expense fund—a fixed, unvarying, monthly instalment of 60 cents is required upon each share of the stock held by the borrower. There are also other differences. We are aware that that case has been followed in Massachusetts, New Hampshire, Pennslyvania, and perhaps other States, and has never been expressly rejected in Virginia. It seems to us, however, to be so free from doubt that the transaction before us is, in its essence, a loan of money, for which the borrower pays more than the rate of interest allowed by law, that we are unable to accept the theory of partnership as relieving it from the penalties incident to a usurious transaction. We have considered it the received doctrine in this State, though not hitherto expressly declared, that Building and Loan Associations existed and carried on their operations only by virtue of legislative authority, and were thus authorized or permitted to deal with their members in a manner that would be deemed usurious if resorted to in ordinary business affairs.

In *White* v. *Mechanics Building Fund Association*, 22 Gratt. 233, this subject was investigated, and, while not expressly decided, the opinion leaves little reason to doubt that the charge of usury would have been sustained had not the Association been protected by its charter, which derived its authority from the Act of May, 1852.    Judge Anderson says that he was strongly inclined to the opinion that the transaction was usurious, but finally determined to concur in the opinion that it was authorized by the statute, and therefore could not be usurious.    And, again, Judge Anderson says, at page 245: "If the transactions and dealings of this Association with its members are warranted by statute, and that statute is warranted by the Constitution, though they may operate harshly and oppressively, it is not the province of the courts to relieve.    The fault is in the law, which the legislature alone can alter; or in the improvidence of the party, which neither the legislature nor the courts can remedy."

In *Pfeister* v. *Wheeling Building Association*, 19 W. Va., at p. 710, Judge Green, after an elaborate and careful review of a large number of cases, English and American, bearing upon the subject, reaches this conclusion: "When the Building Association is unincorporated, and therefore a partnership, the weight of authority is perhaps in favor of holding that a share redeemed by the Association should be regarded not as a loan but as an advancement made out of the partnership assets, though the courts which hold this would doubtless hold that if it should be found that this mode of doing business was in truth and fact a mere cover to effect loans at illegal interest, such a redemption of shares by such unincorporated Building Association would be regarded as a loan.    See *Shannon* v. *Dunn*, 43 N. H. 198. But there is, as we have seen, highly respectable authority which holds that the redemption of a share by an unincorporated Building Association should of itself be regarded as a loan, and not as a purchase of the interest of the member, or as an advancement to him out of the partnership funds; and, it seems to me, this view is sustained by the weight of reason.    That this redemp-

tion, in the usual way, of a share in an unincorporated Building Association, could not be regarded as a purchase by the other partners of the interest of the redeemed member in the partnership would seem clear, because he admittedly remained a partner, and had a voice as a partner in the management of the concerns of the partnership. Nor, it seems to me, can it with propriety be regarded as an advance to him as a partner out of the partnership funds of a part or of the whole of his profits, or anticipated profits. If this were the transaction, there would be no requirement of him to pay interest on what was advanced to him, as it assumed that this advance is only a payment on his profits in the partnership. The payment of interest seems to me to give to this transaction the character of a loan."

While, therefore, this case may be distinguished from that of *Silver* v. *Barnes,* we do not propose to rest our decision upon any such nice discrimination, but, relying upon the views expressed by the court in *White* v. *Mechanics Building Association, supra,* and upon the conclusion reached by the Supreme Court of West Virginia, just cited, we feel waranted in refusing to yield to the doctrine enunciated in *Silver* v. *Barnes,* though supported by decisions of courts of the highest respectability.

The Association claims that whatever doubt may have existed as to its powers under its original charter has been removed by the act entitled "An act to define the powers and limitations of Building and Loan Associations," approved March 1, 1894 (Acts 1893-4, p. 560), which provides that any number of persons, not less than five, may hereafter form a Building and Loan Association for the purpose of encouraging industry, frugality, and home building and saving among its members, as provided in section 1145 of the Code; and declares that Building and Loan Associations heretofore chartered and incorporated by said section, or any general or special act, or under the laws of any other State, which have complied with the laws of this State, shall have and enjoy certain powers and privileges therein enumerated. They are authorized to fix by their by-laws the premiums or bonus at which they will dispose

of the money in their treasury, and lend to any member the value of any shares held by him, less such premium or bonus.

If the transaction under investigation had been subsequent to the passage of that act, the question presented to us would have been quite a different one from that which we are called upon to decide.    Courts will not construe a statute so as to give it a retroactive effect unless there is something on the face of the enactment putting it beyond a doubt that such was the purpose of the legislature.    Upon this point, says Judge Staples, in *Danville* v. *Pace,* 25 Gratt., at page 4, "there can be no solid ground for controversy."    Viewing the act of 1894 in the light of this canon of construction, and conceding, for the sake of the argument, the amplest power to the legislature to give validity to transactions which might be otherwise impeached as usurious, there is nothing which requires or would justify us in giving such a construction to the statute under consideration. It, without doubt, sanctions and ratifies charters of Building and Loan Associations theretofore granted by courts under section 1145 of the Code, and confers upon them many privileges; but not one word is said as to their past transactions.    What they may do in the future is carefully laid down, but with respect to the past the statute is silent, and the legal effect of what had been done under charters theretofore obtained is left to be determined by the general law unaided and unaffected by that Act.

Having reached the conclusion that the transaction between the appellant and the Old Dominion Building and Loan Association was usurious, and that the sting of illegality has not in any manner been removed, it remains for us to consider the relief to which the appellant is entitled under the circumstances of this case.

From the date of the loan in April, 1890, up to and including January 25, 1894, the appellant seems to have paid the interest and dues, aggregating $17 monthly.    At the last mentioned date his ability or willingness to pay seems to have been exhausted, and from that time on he paid nothing, and by reason

of his default was fined 10 cents a month on each share of his stock, making in the aggregate for twenty-one months of default the sum of $42. When the trustees were directed to sell, the account between the Association and appellant was stated. He was charged with $1,000 advanced, with interest thereon to October 25, 1895, and with fines and dues and insurance premiums to the same date, making an aggregate of $1,401. He was credited by the amount of interest and monthly dues of 60 cents per share upon each share of his stock, the aggregate of these monthly dues so paid being denominated in the association's statement of its claim as "withdrawal value of stock." These payments of interest and dues, together making the sum of $725.63, deducted from the $1,401 leaves a balance of $675.37, payment of which is demanded by the Association of Crabtree.

Treated as a transaction between the Building and Loan Association and one of its members the account seems to be correctly stated; but as an account between a debtor and creditor, it is not correct. The balance should have been struck at the date of the last payment, which was the 25th day of January, 1894, and, the transaction being usurious, no interest accrued upon it from that date until the balance was ascertained, and a decree upon it rendered, and there could, of course, be no accretion of dues, and no assessment of fines. The Circuit Court should have ascertained the amount due on the loan by applying the credits of interest and "withdrawal value" (so-called) of the stock in accordance with the Association's statement of its demand, and then have decreed for the balance due with interest from date.

This brings up the question of the application of payments upon usurious contracts, a subject which was fully considered and finally disposed of by this court in the case of *Munford* v. *McVeigh*, 92 Va., at page 446, where it was held: "Where payments have been made upon a debt upon which a greater rate of interest than that allowed by law is reserved in the contract, or received in order to secure the forbearance of the lender, and the borrower himself applies the payment to the interest, or the

lender so applies it with the assent of the borrower, the appropriation so made will not be disturbed, unless within one year thereafter a suit be instituted by the borrower for its recovery, or a suit be brought by the lender within that period, in which case the borrower may set it off against the demand for which he is sued."

This suit was not instituted until December, 1895, nearly two years after the last payment was made by the appellant, in January, 1894. More than a year having elapsed, the limitation prescribed by section 2823 had attached, and the court was powerless to disturb the application of payments made by the parties.

For the foregoing reasons, the decree of the Circuit Court must be reversed, and the cause remanded to be proceeded with in accordance with the views expressed in this opinion.

*Reversed.*