## Richmond

### COMMONWEALTH V. WELLFORD & OTHERS.

#### January 16, 1913.

1. WILLS—*Defeasible Fees—Contingent Remainders—Vested Remainders—"Heirs" Meaning "Children."*—A testator, who was not a lawyer, prepared and executed his will in 1857, and died a few years thereafter.  The clause of the will bearing upon the matter in controversy is as follows: "In the event of my children all dying before having attained the age of twenty-one years, and without issue, my wife is to have the annual income from my estate during her lifetime, and at her death the estate is to pass to the heirs of my two brothers."  At the date of the will the testator had three infant children, all of whom died under age and without issue, and two brothers, both of whom had children living at the date of the will, who, with their parents survived the testator.  The two brothers died after the death of all the testator's children.

   *Held:* 1. The testator's children took defeasible fees in the principal of the estate which were liable to be, and were divested by the death of all the testator's children under age and without issue.

   2. The expression "heirs of my two brothers," under the circumstances of this case, means the children of the two brothers, and, at the death of the testator, the children of his two brothers took a contingent remainder in the principal of the estate, which, upon the death of the last survivor of the children of the testator under the age of twenty-one years and without issue, was immediately converted into a vested remainder, and was, therefore, at that time descendible, devisable and alienable, though the possession and enjoyment were postponed until after the death of the life tenant.

2. WILLS—*Remainders—Vesting.*—The law favors the vesting of estates at the earliest possible moment consistent with the terms of the instrument creating them, and this principle is not affected by the circumstance that the distribution is to be made through the agency of a power in trust, nor that the estate includes both real and personal property.

3. TAXATION—*Collateral Inheritance—What Statute Applicable—Vesting of Estate.*—The question of the liability of a remainder

which vested in interest in 1861 to a collateral inheritance tax from the essential character of that imposition must be determined by the statute law in force at that time, notwithstanding the general rule that such taxes are not collectable until the owner comes into the possession, or is entitled to receive the estate.

4. STATUTES—*When Prospective.*—Statutes must be construed to act prospectively unless a contrary intention is manifest and plain.

5. TAXATION—*Collateral Inheritance—Act of 1896 Prospective.*—The act of assembly of February 14, 1896 (Acts 1895-6, pp. 367-8), imposing a collateral inheritance tax is not retrospective in its operation, and does not warrant the imposition of such tax on a remainder which vested in interest in 1861, although the life tenant did not die until 1907.

6. TAXATION—*Collateral Inheritance—Vesting of Estate.—Subsequent Statute.*—A statute imposing a collateral inheritance tax which becomes a law after an estate has vested in interest cannot apply to such an estate, though it does not come into the actual possession and enjoyment of the owner until after the passage of the act.

Appeal from a decree of the Circuit Court of the city of Norfolk. Decree for the defendants. The Commonwealth appeals.

*Affirmed.*

The opinion states the case.

*Samuel W. Williams, Attorney General,* for the Commonwealth.

*Hugh C. Davis, Jones & Woodward, S. R. Buxton, C. E. Cary* and *Braxton & Eggleston,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This appeal is from a decree of the Circuit Court of the city of Norfolk refusing to impose a collateral inheritance tax upon property derived by appellees under the will of Dr. Henry Selden, deceased.

The essential facts are these: The will in question, which bears date September 4, 1855, was wholly written by the testator and without the aid of counsel. At that time Dr. Henry Selden, who was possessed of a large estate, had a wife and three infant children, Alfred Selden, Henry Selden, Jr., and Elizabeth Selden. The daughter predeceased the testator. Alfred Selden died in December, 1857, and Henry Selden, Jr., in December, 1861, all under the age of twenty-one years and without issue. The widow intermarried with William H. Zollicoffer in 1869, and died in October, 1907. At the date of the will testator also had two brothers, Dr. William Selden and Robert C. Selden, both of whom had children living at that time, and all of them, with their parents, survived the testator. Dr. William Selden died in November, 1887, and Robert C. Selden in November, 1890.

The clause of the will which specially bears upon the matter in controversy is as follows: "In the event of my children all dying before having attained the age of twenty-one years, and without issue, my wife is to have the annual income from my estate during her lifetime, and at her death the estate is to pass to the heirs of my two brothers."

By this provision of the will testator's children took defeasible fees in the principal of the estate, which were liable to be devested by all of the children dying under age and without issue, which events, as we have seen, happened. *Elys* v. *Wynne,* 22 Gratt. (63 Va.) 224; *Randolph* v. *Wright,* 81 Va. 608; *Johnson's Admr.* v. *Citizens Bank of Richmond,* 83 Va. 63, 1 S. E. 705; *Snyder* v. *Grandstaff,* 96 Va. 473, 31 S. E. 647; *Daniel* v. *Lipscomb,* 110 Va. 563, 66 S. E. 850.

In the last-named case the court quotes, with approval, the statement of the rule by Professor Minor, that "The possibility of limiting the whole fee by means of an *execu-*

*tory limitation,* and afterwards, upon some contingency, *qualifying that disposition,* and giving the estate to some other person, arises out of the fact that the several statutes (of uses, wills and grants) which give birth and validity to such limitations, dispense with *livery of seisin* to create a freehold, and thereby dispense with the corresponding *notoriety of entry* to determine it." 2 Min. Inst. (3rd ed.) 426, 427.

So, also, the learned author, after announcing the general doctrine that a remainder cannot be limited after a fee simple estate, observes: "It is possible, however, even at common law, to limit two concurrent fees, by way of remainder, as substitutes or alternatives, one for the other, the latter to take effect in case the prior one should fail to *vest in interest;* although if the first does vest in interest, the subsequent limitation is immediately avoided. * * * Such a limitation as the one above stated is called a limitation on a *contingency in a double aspect,* and sometimes a *remainder on a double contingency."* 2 Min. Inst. (4th ed.) 395. A vested remainder is defined as a "remainder limited to a certain person, and on a certain event, so as to possess a *present capacity to take effect in possession,* should the possession become vacant." Fearne's Rem. 216.

Bearing in mind these elementary principles, the next question for determination is in whom and when did the limitation over of the principal of the estate vest in interest upon the failure of the prior estate intended for testator's children?

His wife and children were the first objects of his bounty, and in the event of the failure of the children to take, she was to have the annual income from the estate during her lifetime, "and at her death the estate is to pass to the heirs of my two brothers." The "heirs" of these two brothers seem to have been next in his affection, and after provid-

ing for his widow for life, he gives the corpus of the estate to them.

It must be remembered that all the children of the two brothers were living at the date of the will, which, as observed, was written by the testator. He was not a lawyer, and it is not to be supposed that he was conversant with technical legal terms. In these circumstances it is more reasonable to presume that when testator used the expression, "the heirs of my two brothers," he meant the children of his two brothers, than that he employed the word "heirs" in its technical sense.

In *Roberson* v. *Wampler*, 104 Va. 380, 383, 51 S. E. 835, 836, 1 L. R. A. [N. S.] 318, the court says: "But when from the language of the instrument and the circumstances surrounding its execution it appears that the maker, in using the word 'heirs' meant children, it will be so construed. This it is conceded is so as to wills."

We have numerous decisions to the same effect. Our conclusion, therefore, on this branch of the case is that the children of testator's two brothers at his death took a contingent remainder in the principal of the estate, which, upon the death of his last surviving child, December 20, 1861, under the age of twenty-one years and without issue, was immediately converted into a vested remainder, and was, therefore, at that time, descendible, devisable and alienable, though the possession and enjoyment were postponed until after the death of the life tenant. Page on Wills, sec. 658.

In *Allison* v. *Allison*, 101 Va. 537, 569, 44 S. E. 904, 915 (63 L. R. A. 920), it is said: "A vested remainder is as truly a present fixed property or ownership as is an estate in possession. * * * 'The person entitled to a vested remainder has an immediate fixed right of future enjoyment—that is, an estate *in presenti*, though it can only take effect in possession and pernancy of the profits at a future period.'"

It is a cardinal rule with respect to the devolution of title to property that the law favors the vesting of estates at the earliest possible moment consistent with the terms of the instrument creating them; and that moment in this instance was at the death of testator's last surviving child. *Catlett* v. *Marshall,* 10 Leigh (37 Va.) 83; *Cooper* v. *Hepburn,* 15 Gratt. (56 Va.) 551, 556; *Stone* v. *Nicholson,* 27 Gratt. (68 Va.) 1, 13; *Stokes* v. *Van Wyck,* 83 Va. 724, 732, 3 S. E. 387; *Gish* v. *Moomaw,* 89 Va. 345, 367, 15 S. E. 868.

Nor is the principle regulating the time of the vesting of the estate of the remaindermen affected by the circumstance that the distribution was to be made through the agency of a power in trust (*Seller's Ex'or* v. *Read,* 88 Va. 377, 381, 13 S. E. 754; *French* v. *Logan,* 108 Va. 67, 60 S. E. 622; *Allison* v. *Allison, supra*), nor that the estate includes both real and personal property, for the rule relating to devises controls. *Seller's Ex'or* v. *Read, supra,* p. 379.

Having reached the conclusion that the estate in remainder vested in interest in 1861, the question of its liability to a collateral inheritance tax, from the essential character of that imposition, must be determined by the statute law in force at that time, notwithstanding the general rule that such taxes are not collectable until the owner comes into possession, or is entitled to receive the estate.

It is conceded that there was no statute in force prior to the act of February 14, 1896 (Acts 1895-96, p. 367-8), which authorized the imposition of the collateral inheritance tax sought to be enforced in these proceedings. And it is by virtue of that enactment that the assessment was made. Therefore, unless the statute is to be given retroactive operation, it cannot apply in this case; and the general proposition as to whether such statutes, to be applicable in a given case, must have been in force at the death

of the testator or at the time of vesting in.interest of the estate in remainder, is immaterial since both of these events preceded the passage of the act.

The following provisions of the act of February 14, 1896, show that it was intended to operate prospectively. It declares, among other things, (1) "That where any estate within this Commonwealth of any decedent shall pass, under his will, or the laws regulating descents and distributions, to any other person, or for any other use than to or for the use of the father, mother, husband, wife, brother, sister or lineal descendant of such decedent, the estate so passing, if of greater value than two hundred and fifty dollars, shall be subject to a tax of a certain per cent."

(2) "The personal representative of such decedent shall pay the whole of such tax  *   *   * "

(3.) "Any personal representative, devisee, or person to whom the estate may descend by operation of law, failing to pay such tax before the estate on which it is chargeable is paid or delivered over  *   *   *, shall be liable in damages  *   *   * "

(4) "Such estate.shall be deemed paid or delivered at the end of a year from the decedent's death, unless and except so far as it may appear that the legatee or distributee has neither received such estate, nor is entitled then to demand it.

(5) "This act shall be in force from its passage."

These excerpts from the act sufficiently indicate that it was intended to operate prospectively. Besides, it is an established canon of interpretation that statutes must be construed to act prospectively unless a contrary intention is manifest and plain. The authorities speak with one voice on this subject. Indeed, some of the cases hold that to justify a retroactive construction there must be something on the face of the enactment putting it *beyond .a doubt* that such was the purpose of the legislature. *Crab-*

*tree* v. *Building Association,* 95 Va. 670, 29 S. E. 741, 64 Am. St. Rep. 818; *Merchants Bank of Danville* v. *Ballou,* 98 Va. 112, 32 S. E. 481, 44 L. R. A. 306; *Whitlock* v. *Hawkins,* 105 Va. 242, 53 S. E. 401.

The contention on behalf of the State that the estate in remainder is amenable to tax because the act was in force at the death of the life tenant in 1907 is not tenable. In cases to which the statute applies, in fixing the date at which the tax is collectable, it in terms distinguishes between the time of the passing of the title and the time when the property is received or demandable. Thus it declares: "Such estate shall be deemed paid or delivered at the end of a year from the decedent's death, unless and except so far as it may appear that the legatee or distributee has neither received such estate, nor is entitled to demand it."

The exception is intended to meet a case arising under the statute in which the estate had vested in interest within the year from the decedent's death, but where, from some cause, the possession or enjoyment was postponed beyond that time.

The statute not being retrospective in its operation can not apply to the property of the appellees.

In *Carter* v. *Whitcomb,* 74 N. H. 482, 484, 69 Atl. 779, 781, 17 L. R. A. [N. S.] 733, the court said: "Equally untenable is it to urge that the amendment of 1907 was intended to have a retrospective effect and to apply to estates then in course of settlement. The language used is prospective. It relates to property 'which shall pass by will.' The testatrix's will became effective to pass property upon her death. The necessary delays incident to the settlement of the estate and final decree of distribution did not postpone the passing of the estate within the meaning of the statute. The legatees derive their title from the testatrix. Their rights became fixed at her death. They

then became the owners of the property bequeathed to them, though the possession and actual enjoyment thereof were delayed by operation of law, and at the same time the right of the public to the tax accrued.   *   *   *   The rights, therefore, of the parties to the suit under the will in question must be determined in accordance with the statute of 1905, which was in force when the testatrix died and when the interests of the parties under her will vested."

"Again, in *Craig's Estate*, 89 N. Y. Supp. 971 (affirmed on appeal), 181 N. Y. 551, 74 N. E. 1116, the court held: "Where one in contemplation of marriage, only, by deed containing no power of revocation, transfers his property to trustees, to pay the income to him for life, and on his death to pay the principal in certain proportions to his widow and the issue of the marriage, and the marriage took place and the issue were born, all before passage of any transfer tax law, the interests of the remaindermen then accrued, and their right to take on the death of the life tenant could not thereafter be made subject to a transfer tax."

*In re Pell's Estate,* 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791, it was held that a statute passed in 1899, relating to taxable transfers of property and providing for a tax on remainders and reversions which had vested before June 30, 1885, upon their coming into actual possession or enjoyment, was an attempt to tax the right of succession, and not a direct tax upon property, and was unconstitutional as diminishing the value of vested estates, impairing the obligation of contracts, and taking private property for public use without compensation.

These cases sufficiently illustrate the doctrine (which is plain on principle without authority) that a collateral inheritance tax statute, which becomes a law after an estate has vested in interest, cannot apply to such an

estate, though it does not come into the actual possession and enjoyment of the owner until after the passage of the act.

We are of opinion that the decree of the Circuit Court of the city of Norfolk is without error, and it must be affirmed.

*Affirmed.*