## COOLIDGE et al. v. NICHOLS, Collector of Internal Revenue.

(District Court, D. Massachusetts. January 28, 1925.)

No. 2236.

1. Internal revenue ⊕=8—Completed gift by decedent held not subject to estate tax.

A mother, more than two years prior to her death, conveyed real estate by warranty deeds to her sons, who at the same time executed leases for one year for a nominal rental; each providing that it should be taken to be renewed from year to year subject to the right of either party to terminate it at the end of any year by written notice. *Held*, that the effect was to vest complete title and right of possession in the grantees, not dependent in any way on the death of the grantor, and that her estate had no interest therein subject to tax under Revenue Act 1918, § 402 (c) (Comp. St. Ann. Supp. 1919, § 6336¾c).

2. Internal revenue ⊕=8—Property transferred in trust by decedent held within statute imposing estate tax.

Decedent and her husband executed an instrument by which they conveyed property in trust, the income to be paid to them during the life of either of them, with remainder to their sons. Later they assigned all their interest in the fund to the sons, with direction to the trustees to pay the income to them. *Held*, that while by such instruments decedent was divested of all estate and interest in the trust property and its income, the transfer of the principal of the fund was "intended to take effect in possession or enjoyment at or after her death," and that the value of the property so transferred would be required by Revenue Act 1918, § 402 (c) (Comp. St. Ann. Supp. 1919, § 6336¾c), to be included in her gross estate for the purpose of computing the estate tax thereon, if made after passage of the act.

3. Internal revenue ⊕=2—Retroactive provision of Revenue Act held unconstitutional as applied to transfers completed and effective before its passage.

The retroactive provision of Revenue Act 1918, § 402 (c) (Comp. St. Ann. Supp. 1919, § 6336¾c) *held* unconstitutional and void as applied to a transaction entirely completed before the passage of the act, by which a decedent

had been wholly divested of any interest in property for the transfer of which her estate is sought to be taxed, and the complete ownership had become vested in others.

Action by Harold J. Coolidge and others, executors, against Malcolm E. Nichols, Collector of Internal Revenue. Verdict directed for plaintiffs.

Storey, Thorndike, Palmer & Dodge and Harold S. Davis, all of Boston, Mass., for plaintiffs.

United States Attorney, for defendant.

BREWSTER, District Judge. This is an action of contract brought by the plaintiffs, as executors under the will of Julia Coolidge, late of Brookline, in this commonwealth, against Malcolm E. Nichols, as collector of internal revenue for the district of Massachusetts. The suit is brought to recover a sum of money paid to the collector by the executors under protest, in response to a demand for an additional tax assessed upon the estate of Julia Coolidge. The plaintiffs claim the estate is not liable for this additional tax.

In this case the only evidence before you is that included in the agreed statement submitted by counsel. None of the material facts are in controversy; therefore no issue of fact is presented. Rather, this is a case where it becomes necessary for the court to determine as a matter of law whether, upon these facts, the plaintiffs are entitled to recover, and, if so, in what sum. The amount involved is considerable, and the questions of law calling for consideration involve the construction and validity of an act of Congress. I have therefore given much thought to the arguments and brief of counsel; have examined the authorities submitted; and have reached certain conclusions which I will undertake to state as clearly as I may.

Since the disposition of this case depends upon the determination of questions of law rather than issues of fact, I shall depart somewhat from my usual practice in jury trials and elaborate somewhat the reasons upon which these conclusions are based.

From the undisputed evidence it appears that on July 29, 1907, Julia Coolidge joined with her husband, J. Randolph Coolidge, in an instrument of transfer whereby she and her husband transferred and conveyed to trustees named certain real and personal property. The trustees on the same day duly executed a declaration of trust respecting the property so conveyed, together with all accumulations and accretions and all

property substituted for the original fund, which trust provided that the trustees should pay the net income—three-sevenths to Julia Coolidge and four-sevenths to J. Randolph Coolidge "so long as they both live and to pay the whole of said net income to the survivor; and upon the death of the survivor to distribute equally the trust property among the following persons, who are children of said J. Randolph Coolidge and Julia Coolidge, viz.: J. Randolph Coolidge, Jr., John Gardner Coolidge, Archibald Carey Coolidge, Harold J. Coolidge, and Julian L. Coolidge; and, should any of said persons predecease the survivor of the said J. Randolph Coolidge and Julia Coolidge, to pay the share of the person so predeceasing to those who would be entitled to take his intestate property under the statute of distribution in effect at the time of the death of said survivor, provided that in no case shall a surviving widow take as distributee more than one-half of said share."

On April 6, 1917, Julia Coolidge and J. Randolph Coolidge joined in another written instrument whereby they transferred, conveyed, and assigned to J. Randolph Coolidge, Jr., John Gardner Coolidge, Archibald Carey Coolidge, Harold J. Coolidge, and Julian L. Coolidge, in equal shares, all their interest in said trust fund, and all their right to receive the income therefrom, including additions thereto and any accrued income which had not already been paid over to them, and the trustees by said instrument were requested and directed to pay the income to said five children in accordance with the assignment.

On May 18, 1917, Julia Coolidge executed two deeds whereby she conveyed to the five sons already named two certain parcels of real estate, one situated in Boston and the other in Brookline. The deeds were in statutory short form of deeds with warranty covenants obtaining in Massachusetts, and were recorded on May 18 and May 19, 1917, respectively.

At the time these deeds were given the grantees named therein executed and delivered to grantors a lease covering each of the properties conveyed which, in all material respects, were identical except as to description. Each lease was for the term of one year, and the rent reserved was at the annual rate of $1. Each lease contained the usual covenants found in the form commonly used in Massachusetts and contained also these pertinent provisions:

"This lease shall be taken to be renewed for the term of one year from the end of

the specified term, and thereafter shall be taken to be renewed from year to year unless written notice is given by either party to the contract at least one month before the end of the original term or any renewal thereof."

Both parcels of real estate conveyed by the deeds were for many years owned by the decedent in her own right and occupied by her and her husband as places of residence. When the leases were made, it was understood by the parties that, should the lessees desire to continue to occupy the residences on the leased premises for the purpose of residing therein themslves, the leases would continue to be renewed from year to year during the life of the lessees or either of them.

The conveyance to the trustees and the conveyances of the Boston and Brookline real estate were not bona fide sale for a fair consideration in money or moneys' worth within the meaning of the provisions of acts of Congress to which your attention will be presently directed.

Julia Coolidge died January 6, 1921, leaving a will duly admitted to probate in the county of Norfolk in this commonwealth. The plaintiffs are executors of that will. Mrs. Coolidge left a gross estate, exclusive of the property to which I have called attention, of over $180,000, and a net estate of over $100,000. The commissioner of internal revenue increased the gross estate by adding thereto $432,155.35, the value as of the date of the death of Julia Coolidge of that part of the trust property which was deemed to have been conveyed by her in trust, although, as a result of changes in investment, much of the property originally received by the trustees was not held by them in specie at the time of her death. The Commissioner of internal revenue also included in her gross estate $272,300, being the value at the time of her death of the property conveyed by the two deeds already referred to.

As a result of this action on the part of the commissioner of internal revenue an additional tax was assessed against the estate, with interest amounting to $36,799.38, which sum the plaintiffs paid under protest June 8, 1923, and, plaintiffs' claim for a refund having been duly filed and having been denied by the commissioner of internal revenue, this suit is brought to recover the sum paid with interest from June 8, 1923.

The ultimate questions to be determined are these: Did the Commissioner of Inter-

nal Revenue have a right to include in the gross estate of the decedent:

(a) The value at the time of her death of the property held by the trustees under the declaration of trust heretofore mentioned, and

(b) The value of the Boston and Brookline real estate conveyed by the decedent to her five sons by the two deeds aforementioned?

In the Revenue Act of 1918 (40 Stat. 1096) Congress imposed a graduated estate tax upon the transfer of the net estate of every decedent dying after the passage of the act. The tax was to be measured by the value of the net estate, which was to be determined by deducting from the gross estate certain sums and charges not now necessary to enumerate. The important provisions of the law are those which define and limit the value of the gross estate for the purposes of the tax. These provisions are as follows:

"Sec. 402. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or, after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title." Comp. St. Ann. Supp. 1919, § 6336¾c.

It is claimed by the government that the value of both the property conveyed in trust and the real estate conveyed outright came within the scope of this section as transfers made or trusts created with the intention that they should take effect in possession or enjoyment at, or after, the death of Mrs. Coolidge. I do not understand that it is claimed here that there was any completed gift inter vivos made in contemplation of death, and, if there was such a claim, the transfers having been made more than two years prior to the death of Mrs. Coolidge, you would not be justified in finding that they were made in contemplation of death in the absence of any affirmative evidence tending to show that they were so made.

It follows, therefore, that, if the value of this property, or any of it, is to be included in the gross estate, it is because the facts support the contention of the government that the transfers were intended to take effect in possession and enjoyment at or after the death of the decedent.

It becomes necessary, therefore, to determine whether (1) the transfer in trust and (2) the outright conveyances of real estate were intended to take effect in possession and enjoyment after Mrs. Coolidge's death.

[1] I do not have much difficulty in reaching a conclusion respecting the deeds of the Boston and Brookline real estate, and I will first consider the claim of the parties respecting those transfers.

The deeds conveyed, with warranty covenants, absolute and indefeasible title to the real estate without any valid reservations, conditions, or restrictions whatsoever.

The leases, executed the same day, were for one year or any renewal thereof, but were always subject to the right in the lessors to terminate the term during any year by giving the notice as therein provided. It is conceded that the parties contemplated that the premises would be enjoyed by the decedent and her husband so long as they might desire to use them for residential purposes, but the decedent had no valid agreement to that effect. Her rights must be held to be governed by the terms of the lease. If it could be said that the grantees did not come into full possession and enjoyment of the estate at the time of the conveyances— and I am inclined to the opinion that they did—their right to come into full possession did not depend in the slightest degree upon the death of the grantor. The effect of this transaction was to vest in the five sons named in the deed full and complete title to the property including the right of disposition. They had a right to sell the property subject to the lease, and had all rights incident to ownership. There was here a gift completed during the lifetime of the donor. The act of 1918 did not purport to tax such gifts.

I have reached the conclusion, therefore, that respecting the property conveyed by the deed the facts of this case do not bring the property within the reach of the statute, and that the commissioner of internal revenue was without authority to include the value of it as a part of the gross estate. I

therefore give the following instructions, as requested by the plaintiffs: The real estate referred to in the second count of the declaration was not a part of the net estate, of Julia Coolidge within the meaning of the Revenue Act of 1918.

[2] The plaintiffs also claim that the transfer in trust was not one to take effect in enjoyment and possession after death within the scope of the act, and therefore the value of the property transferred should not have been included.

In the first place, it is necessary to inquire into the nature of the estate arising as a result of the transfer of July 29, 1907, and the assignment of April 6, 1917. The effect of these instruments was to divest Mrs. Coolidge of all interest in the property, the sons becoming, in effect, equitable owners in fee, subject only to the possibility that, if a son died during the lifetime of the parents, or the survivor of them, his share would go to his next of kin. The interest of the sons, therefore, was' not a contingent interest, but rather a vested interest, liable to be divested by death before the death of the survivor of the parents. They would not, however, come into the full possession and enjoyment of the trust property; they could not exercise full dominion over it, sell or otherwise dispose of it, until the termination of the trust, and by its terms the trust was not to be terminated until on or after the death of the decedent.

But the decedent had entirely parted with all her right, title, and interest, legal or equitable, in the property, retaining no interest therein which would cease upon her death.

If I understand correctly the contentions of the plaintiffs, it is because of this fact that I am asked to instruct you, as a matter of law, that the property held in trust and referred to in the first count of the declaration was not a part of her "net estate" within the meaning of the Revenue Act of 1918. I think, however, that this request requires me to place a construction upon the provisions of section 402(c) somewhat too narrow. This appears when we consider the nature of the tax and the fact that the real question here is whether the value of the property so transferred shall be included in the total valuation which furnishes the measure of the tax. The tax is not laid upon the property transferred nor upon the transfer. The tax has been held to be on the right to transmit or on the transmission at the beginning. The decedent having left an estate which is transmitted upon her death, it has become taxable, and in determining the amount of tax which the estate shall pay the statute expressly provides that there shall be included in the measure of the tax the value of property "to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death."

The term "intended to take effect in possession or enjoyment at or after his death" and the term "in contemplation of death" had both been frequently the subject of judicial definition, and it may be assumed that in drafting the act Congress had in mind these definitions. We find that the courts had held that a transfer in trust similar to the one before us in this case, where the donor had parted with all his interest in property that was to be held in trust until on or after the death of the donor, was a transfer to take effect in possession or enjoyment on or after death. Although the income was payable to the sons, the intention of Mrs. Coolidge obviously was that the principal of the trust fund should not vest in full possession and enjoyment until after her death.

It is pointed out that we are not now dealing with a tax on legacies or successions; that the tax is laid, not on the right to receive property upon death, but on the right to transmit it upon death, and it is therefore argued that, unless the decedent had some interest in the property, the transfer of which is sought to be included, it has no place in the valuation upon which the tax is to be computed; that this case should be distinguished from those cases where the courts have deemed transfers similar to the one before us subject to legacy and succession taxes. I am unable to discern any distinction in principle. If a transfer is one to take effect in possession and enjoyment after death, it may be reached under a statute imposing an estate tax. Granting, as we must, that Congress has power to levy a tax upon the net estate of a decedent, it may adopt any reasonable measure of that tax. Admittedly, it is entirely reasonable to measure the tax by the value of the property transmitted by will or by intestate laws, and I do not think it can be said to be unreasonable to measure the tax also by the value of property of which a decedent during his lifetime has made a disposition which partakes of the nature of a testamentary disposition. In such a case the reasonable-

ness of the measure would not depend on whether the decedent had reserved any interest in the property which would cease upon his death. A completed transfer inter vivos, made in contemplation of death, leaves no interest in the grantor. Whether the transmission be by will, by intestate laws, or by transfers to take effect on or after or in contemplation of death, the transmission bears in each case a reasonable relation to the event of death.

[3] I am of the opinion, therefore, that the trust created by Mrs. Coolidge was a transfer to take effect in possession or enjoyment at or after her death within the meaning of the act of 1918, and that the value of the transfer should be included in her net estate, unless the retroactive provisions expressly incorporated for the first time in the act of 1918 are held to be beyond the power of Congress to enact. This act provides that the value of the property so transferred shall be included, whether such transfer or trust is made or created before or after the passage of the act.

The plaintiffs in effect ask me to say to you that these provisions are unconstitutional and void so far as they apply to the property transferred in trust by this decedent.

This request gives rise to the most difficult question of law found in this case, and one which I confess is not entirely free from doubt. A court of first instance, I take it, should be reluctant to set aside as beyond the constitutional authority of Congress a purpose clearly declared. On the other hand, we are dealing with a law imposing the burden of taxation, and the authority of Congress cannot be extended by implication. In view of the construction which I have put upon the act, the rights of the parties to this litigation cannot be settled without disposing of plaintiffs' request.

You have before you a situation where the decedent during her lifetime and at a time when no tax was imposed on the transfer had entirely divested herself of all interest in the trust property which was included by the commissioner of internal revenue in the gross estate. It was a completed transaction. All interests in the property had vested in others.

We have therefore an attempt on the part of the government to exact an estate or indirect tax computed upon the value of property which did not constitute a part of decedent's estate but concerning which, at a time when it was not taxable, she had made a transfer that did not take effect in full possession and enjoyment until after her death. I am of the opinion that the express terms of the act providing the standard by which this tax is to be measured embrace such property. The constitutional question presented is whether it lies within the power of Congress to adopt a criterion which would extend to such property transferred under such circumstances.

It has been stated that the nature of the excise or indirect tax forbids retroactive operation; that to exact a tax upon the privilege of consummating a transfer after it is completed leaves no choice in the taxpayer, and the tax becomes an unavoidable and absolute demand, thereby losing its essential characteristics as an excise or indirect tax, and becomes in effect a direct assessment upon the property itself simply because of ownership, and as such is unconstitutional, unless apportioned among the states.

Ordinarily, a tax which cannot be shifted or the payment avoided is deemed a tax upon the holder thereof in respect to his ownership of property, and therefore a direct tax; but after a careful examination of the authorities on this point I am not prepared to state it as my opinion that Congress has not authority to give retroactive effect to a law providing an indirect tax.

If those express retroactive provisions now under consideration are to be deemed unconditional, as applied to the facts before us, it would seem to be rather upon the ground that the attempt was an unreasonable and arbitrary exercise of the taxing power.

The power of Congress to provide the measure of a tax laid upon a legitimate object is far-reaching, and must be upheld, unless it is wholly arbitrary and unreasonable. What is the test of reasonableness? I gather from the cases and from the brief filed by the government that the reasonableness of the classification turns upon the question of whether the transfer sought to be included bears any reasonable relation to the net estate of the decedent.

It is the contention of the government that, although the decedent had, prior to the passage of the act of 1918, parted with all her interest in the property, her death was a "generating source" of the possession and enjoyment, and that therefore a reasonable basis existed for including the value of the property in the measure of the tax. As I do not accept the premise as sound, I am unable to adopt the conclusion. Nothing passed upon the death of Mrs. Cool-

idge. Upon her death no interest ceased with corresponding accretion to the living. The only possible effect of her death would be to change the relationship between the beneficiaries and the trust fund. I regard the transfers rather than her death as the "generating source" even of the enjoyment and possession.

From the agreed facts it must be admitted that the property sought to be included as a part of the decedent's estate belonged to others at the time of her death. Clearly, there must be some limitation to the power of Congress to exact a tax on one measured by property of another. I take it the government would not seriously contend that an estate tax could be levied upon the estate of A, to be measured by the value of B's property, when neither the property of B. nor the manner of its acquisition bore any reasonable relation to the subject-matter of the tax.

I am unable to perceive on what grounds it could be successfully claimed that the transfer in question, or the property transferred, could be said to bear any reasonable relation to the thing taxed. If, at the time of her death, the decedent had some interest in the property which terminated by reason of said death, or if, at the time the transfer was made, it was taxable, a different situation would arise. In the case before us neither of these conditions exist. The right to impose a tax carries with it the right to adopt all reasonable measures to prevent an evasion of the tax. On this ground the power to measure an estate tax may properly be extended to gifts in contemplation of death or gifts to take effect after death, because both are transfers in the nature of testamentary dispositions, and could be easily resorted to for the purpose of evading the tax. I entertain, however, grave doubts whether such power could be reasonably extended to such a transfer if completed before the effective date of the law. In every case of transmission by will, intestate laws or transfers to take effect after death or in contemplation of death, a power, right, or privilege has been exerted or exercised. When one has availed himself of this privilege with knowledge of the tax, actual or constructive, he has voluntarily subjected himself to its burden, and a statute which includes in the measure of the tax the value of the property thus transferred may well be deemed to have provided a reasonable classification, and this even if the decedent has entirely parted with all interest in the property; but when one has,

prior to the imposition of the tax, parted with all control over or interest in the property, the classification becomes arbitrary and unreasonable. Such arbitrary inclusion of property of others has been held in other jurisdiction invalid as unconstitutional.

It has been held that a state possesses no authority to tax remainder, or reversionary, interests created by deed or will prior to the enactment of the law imposing the tax on the theory that state Legislatures are without power to destroy or impair the value of vested interests. It has never been suggested that the power of the state to impose inheritance tax was inferior to that of the federal government. It is true that the statutes which have been held unconstitutional for this reason have imposed succession rather than estate taxes. The conclusions reached, therefore, would not be controlling, but would be significant, I think, upon the question of reasonableness of classification.

I do not find that the precise question here presented and with which I have undertaken to deal somewhat at length, has ever been passed upon by our court of last resort. The inferior courts seem not to be in accord. I am fully aware of the importance of the issue raised in its effect upon the revenues of the government, and for that reason have been led to give most careful thought and study to the helpful briefs filed in the case. As a result, I have reached the conclusion that the retroactive provisions of the act of 1918, so far as they apply to a transaction entirely completed before the passage of the act, are unconstitutional and void, and that therefore the action of the commissioner of internal revenue in including as a part of her net estate the property conveyed in trust by Mrs. Coolidge is without authority.

It follows from what I have said that the plaintiffs are entitled to the instruction already referred to, namely, that, if the Revenue Act of 1918, according to its true construction, purports to authorize the exaction of the payment referred to in the first count of the declaration it is to that extent void because not an exercise of any power granted to Congress by the Constitution of the United States.

The exaction of the payments referred to in the first and second counts of the plaintiffs' declaration being without authority, I say to you, as a matter of law, that upon all the evidence the plaintiffs are entitled to recover the sum of $36,799.38, with interest at the rate of 6 per cent. from June 1, 1923,

to the date of verdict, which counsel agree amounts to $3,618.60.

The first, second, third, seventh, eighth, and ninth requests for instructions submitted by plaintiffs are consistent with this charge and I accordingly give instructions as requested. In view of my conclusions, it becomes unnecessary to consider the fourth, fifth, eleventh, twelfth, and thirteenth requests. The sixth request I deny.

Of the defendant's request for instructions, the second is consistent with what I have said, and is therefore granted. All other requests are denied.

You will therefore by order of court return a verdict for the plaintiffs in the sum of $40,417.98.