**FREW et al. v. BOWERS, Collector of Internal Revenue.**

(Circuit Court of Appeals, Second Circuit. June 1, 1926.)

No. 284.

**1. Internal revenue ⬤�ート8.**

The tax imposed by Revenue Act 1921, §§ 401, 402 (Comp. St. Ann. Supp. 1923, §§ 6336¾b, 6336¾c), is an excise on the right or privilege of transmitting property from a decedent, and not on the right or privilege of receiving it.

**2. Constitutional law ⬤⟝188.**

Mere retroactivity of a national taxing statute does not produce unconstitutionality.

**3. Internal revenue ⬤⟝8—Statute taxing as estate of decedent property with respect to which decedent has created trust, in contemplation of or to take effect at or after death, held applicable to decedent who utilized existing trust, instead of creating one (Revenue Act 1921, §§ 401, 402 [Comp. St. Ann. Supp. 1923, §§ 6336¾b, 6336¾c]).**

Revenue Act 1921, §§ 401, 402 (Comp. St. Ann. Supp. 1923, §§ 6336¾b, 6336¾c), providing for excise tax on privilege of transmitting property of a decedent, and providing that gross estate of decedent shall be determined by including therein the value of any property with respect to which decedent has at any time created a trust in contemplation of or intended to take effect in possession or enjoyment at or after his death, *held* to apply to decedent who, though he did not strictly create a trust, utilized one already created by gift to trustees.

**4. Internal revenue ⬤⟝8—Property conveyed by decedent to trustees of deceased's wife's estate 12 years before his death, together with accumulated earnings, held not properly included as part of decedent's gross estate, under subsequent revenue act (Revenue Act 1921, §§ 401, 402 [Comp. St. Ann. Supp. 1923, §§ 6336¾b, 6336¾c]).**

Where decedent, 12 years before his death, transferred securities then valued at $200,000 to trustees of his deceased wife's estate, by the use of which the trustees at time of decedent's death had accumulated securities worth $500,000, *held*, such $500,000 was not to be included as part of decedent's gross estate, taxable under Revenue Act 1921, §§ 401, 402 (Comp. St. Ann. Supp. 1923, §§ 6336¾b, 6336¾c) since such construction would render section 402 unconstitutional.

**5. Deeds ⬤⟝1—Property ⬤⟝6—Wills ⬤⟝2.**

The right to own property, to grant it, and to dispose of it by will is within control of states, not of nation.

**6. Internal revenue ⬤⟝2—Revenue act, if construed as taxing decedent's estate on included value of property irrevocably placed in trust before enactment of statute, with accumulations at decedent's death, held unconstitutional (Revenue Act 1921, § 402 [Comp. St. Ann. Supp. 1923, § 6336¾c]).**

Revenue Act 1921, § 402 (Comp. St. Ann. Supp. 1923, § 6336¾c), if it authorizes, in

12 F.(2d)—40

fixing taxable value of decedent's estate, inclusion of value of property irrevocably placed in trust before enactment of statute and 12 years before decedent's death, together with its accumulations at decedent's death, is unconstitutional, either as arbitrary and capricious excise tax, measured by estate of another than decedent, or as unapportioned direct tax.

Hand, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Southern District of New York.

Action by Walter E. Frew and others, executors of the will of William A. Nash, deceased, against Frank K. Bowers, as Collector of Internal Revenue. From a judgment for defendant, plaintiffs bring error. Reversed.

The action is to recover taxes admittedly paid under duress. Plaintiffs are executors of William A. Nash, a citizen of New York, where his will was duly admitted to probate in 1922. His wife, Alice J. Nash, died many years earlier, and her will was probated in New York in 1904. Mr. Nash was an executor and trustee under this will.

The trust created by Mrs. Nash's will directed the income of the trust thereby created should be paid to Mr. Nash for life, with remainder in trust for life as to one part thereof for a son. This part of the estate vests upon the son's death in his children or more remote descendants. The remaining part of the trust was similarly limited to and in a daughter and her children or more remote descendants.

In 1910, several years after the death of Mrs. Nash, and 12 years before his own death, Mr. Nash conveyed and transferred to the trustees of his wife's estate, and for the purposes of that trust, securities then valued at $200,000. This personal property was treated as a portion of the trust created by Mrs. Nash; it was administered and accounted for by her trustees, and in judicial proceedings instituted for the settlement of their account in the proper court of the state of New York it was held and determined that the act of Mr. Nash in 1910 amounted to an absolute and irrevocable gift of said securities to said trustees, and that thereafter said securities and the proceeds and reinvestments thereof constituted an integral and indivisible part of the trust estate created by Mrs. Nash's will.

By sale and reinvestment the capital fund so given to his wife's trust by Mr. Nash in 1910 had produced in 1922 securities of the value of upwards of $500,000, which securities were at Mr. Nash's death and still are in the hands of the trustees under Mrs. Nash's

will. When Mr. Nash died, in 1922, the statute providing for an estate tax upon his property was the Revenue Act of 1921 (Comp. St. Ann. Supp. 1923, §§ 6336¾a–6336¾*l*), of which the pertinent portions are as follows:

"Sec. 401. That, in lieu of the tax imposed by title IV of the Revenue Act of 1918, a tax equal to the sum of the following percentages of the value of the net estate [determined as provided in section 403] is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act, whether a resident or nonresident of the United States. * * *" (The "percentages" here follow.) Comp. St. Ann. Supp. 1923, § 6336¾b.

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

\*       \*       \*       \*       \*

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this act), except in case of a bona fide sale for a fair consideration in money or money's worth." Comp. St. Ann. Supp. 1923, § 6336¾c.

It is admitted that the transfer, gift, or conveyance made by Mr. Nash in 1910 was not "in contemplation of death"; but, because said transfer was "intended to take effect in possession or enjoyment at or after his death," the Treasury laid a tax upon the estate of Mr. Nash in respect of the $500,000, which in 1922 represented the value of the $200,000 worth of securities which he had transferred in 1910. After due proceedings these plaintiffs, as executors of Mr. Nash, paid the tax and brought this action to recover.

The facts above summarized were set forth at length in the complaint. Defendant moved to dismiss on the ground that the facts alleged showed no cause of action. The motion prevailed, and to a judgment for defendant, plaintiffs sued out this writ.

Kellogg & Rose, of New York City (Abram J. Rose, Alfred C. Pette, and Philip M. Brett, all of New York City, on the brief), for plaintiffs in error.

Emory R. Buckner, U. S. Atty., of New York City (Sherwood E. Hall, Asst. U. S. Atty., of New York City, of counsel), for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Consideration of the problem presented seems to require some definition of the nature of the tax imposed. To call it, as it is officially called, an estate tax, does not advance the matter, for the phrase merely indicates the incidence of the charge, not its nature or species.

[1] We think that authority, rather than speculation on the reason of things, must control definition, and we premise by holding that this tax, like any similar burden imposed by the nation rather than a state, is an excise upon the right or privilege (it matters not which word is preferred) of transmitting property from a decedent to those chosen by will or selected by the law of descent. It is not a tax upon the right or privilege of receiving that which is given by will or conferred by law; it is upon the succession from the deceased owner. That which is taxed is the right or privilege of transmitting property, and, if there be "no property to transmit, there would be nothing upon which the tax levied on the occasion of death could be computed." Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969. And see the cases collated in Randolph v. Craig (D. C.) 267 F. 993.

Furthermore these citations prove it as law that such taxes are and have been "almost from the beginning of our national life treated as duties and not as direct taxes." Knowlton v. Moore, supra. If the tax were direct, it would admittedly require apportionment under the Constitution, for which the statute makes no provision.

We next inquire as to the nature, or at least as to the presently material attributes, of the property whose transmission gives rise to this indirect tax—this duty or excise. It is and must be the property of the decedent whose estate bears the incidence of tax. No estate, no tax, said White, C. J., in substance, in Knowlton v. Moore, supra; and it is laid on the transfer of "the net estate of every decedent dying after the passage of this act." Such are the statutory words; so what is taxable in this instance is the property lately of Mr. Nash, and not the property of any one else.

We now consider the extent and intent of the applicable and above-cited statute. Transfers "in contemplation of death" are

not relevant, and this is admitted, as it must be, whether regard be had to the language of the act, or the facts pleaded and undenied in respect of the conduct of Mr. Nash in 1910, when he was a man vigorously and successfully occupying a laborious and important place in the financial world, a position he continued acceptably to fill almost to the day of his death.

The statutory declaration is (speaking in terms of this case) that Mr. Nash's "gross estate" shall be determined by "including" any "interest therein"—i. e., any interest in "all property * * * wherever situated"—of which Mr. Nash "at any time made a transfer, or * * * created a trust * * * intended to take effect in possession or enjoyment at or after his death, whether such transfer or trust is made or created before or after the passage of this act."

[2] Having regard to the recent history of estate tax legislation, as shown by Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454, the report of the same case below in (C. C. A.) 269 F. 321, Coolidge v. Nichols (D. C.) 4 F.(2d) 112, and Girard Trust Co. v. McCaughn (D. C.) 3 F. (2d) 618 (reversed in the Third Circuit, since argument herein, and still unreported), we have no doubt that the intent of the draftsman of the act of 1921, and therefore the intent of the Congress that approved his work, was to coerce, by words too strong to be avoided, the reluctance of courts to give retroactive effect to statutes of exaction, so as to impose on citizens burdens for doing what at the time of doing was unburdened. That reluctance was fully voiced in the Shwab and its allied cases in 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454. Since mere retroactivity of a national taxing statute confessedly does not produce unconstitutionality, we are quite unable to see how it can be doubted that the intent of the statute was to reach past transactions irrespective of their antiquity. If Mr. Nash had been an old Parr, the transfer of 1910 might have taken place in 1810; the legal result would have been the same under this statute.

But the time of creating the trust is not the only matter determinative of the application of the statute; the transfer must be made or the trust created with intent that it "take effect in possession or enjoyment at or after his death"—i. e., after the death of the transferor.

[3] Again, to state the question in terms of this case, there was a "transfer"—i. e., a passing of title—by Mr. Nash; but did he

"create" a trust? In a strict legal sense he certainly did not, Mrs. Nash did that; but for the purposes of this statute we believe there is no difference between creating a trust and utilizing one already created, the terms of which suit the wishes of the transferor. So we regard the statute as intended to apply to Mr. Nash as fully as though he had executed a deed of trust inter vivos to the same legal effect as Mrs. Nash's will.

[4] But, further, what is meant by the phrase "take effect in possession or enjoyment at or after" the death of the trust creator? The natural inclination of every lawyer is to recognize that "take effect" is not a phrase of art, to search for some artistic equivalent, and find it in the word "vest." But if, as the result of a passage of title, the passing estate is vested, whether in fee, for life, in remainder, or in reversion, even though subject to divestment by subsequent event, then the transfer is complete, and so is the "possession or enjoyment," for one "possesses and enjoys" a reversion as thoroughly as he does a fee, even though most men prefer a fee to a reversion.

But if the transfer of an estate results in the immediate vesting thereof, and of each and every part of the same, the transaction is complete, and the grantor or transferor has no "interest" left therein; wherefore on his death there can be found no such "interest" to include in his gross estate.

On the interpretation of these words we think the cases hopelessly at variance. On comparing the Girard Trust Co. Case, Coolidge v. Nichols, supra, Shukert v. Allen (C. C. A.) 6 F.(2d) 551, Cleveland, etc., Co. v. Routzahn (D. C.) 7 F.(2d) 483, and Frick v. Lewellyn (D. C.) 298 F. 803, there will be seen a diversity of opinion incapable of reconciliation. One man may regard the words of the act as a conveyancer would, i. e., read them like the carrying words in a deed; while another may look only to what Congress is supposed to have wanted, i. e., to collect the largest quantum of tax and so read "possession" and particularly "enjoyment" as meaning the time when remaindermen and/or reversioners will obtain the usufruct of the property.

The ruling decisions seem to us to go no further than to definitely hold that a trust creation, wherein the possession or enjoyment in the usufruct sense is deferred until "at or after" the death of the settlor, is a "completed" transaction, a holding consistent only with the more technical and legal interpretation of the statutory words. Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26

A. L. R. 1454; Union Trust Co. v. Wardell, 258 U. S. 537, 42 S. Ct. 393, 66 L. Ed. 753; Levy v. Wardell, 258 U. S. 542, 42 S. Ct. 395, 66 L. Ed. 758. But it is observable that this was said only as preparatory to a holding that the act of 1916 (39 Stat. 778 [Comp. St. §§ 6336½a–6336½m]), in laying taxes in respect of transfers made at "any time," did not mean (as to completed transactions) any time prior to the passage of the act. The point that, if the transaction was "complete," there could be no "interest" left in the estate of the transferor, was certainly not decided and apparently not argued.

Before expressing opinion on this point, we shall consider the ownership and nature of the property in respect of which this particular tax is laid. This excise is on the transfer by his will of the estate of Mr. Nash; if he had no estate, or one less than the statutory exemption, there would be no tax.

[5] It is not on the transfer of 1910; and at that date there was no tax burden of any kind upon what Mr. Nash then did. It is not laid because Mr. Nash died owning or having any testamentary power over what he parted with in 1910. The statute does not pretend to declare ownership, and it could not if it would; for the right to own property, grant it, and dispose of it by will is a matter for the states, and not the nation, and by the law of New York Mr. Nash did not own, and could neither grant nor bequeath, what was owned by the trustees of Mrs. Nash. He did possess and enjoy a life interest in the net income, but that is not relevant to this tax.

Furthermore, Mr. Nash never did own more than $200,000 worth of the property used in computing this tax. By financial operations successfully carried on by Mrs. Nash's trustees, they acquired $500,000 worth of securities, by using the capital given them. How, in any reasonable usage of the word, Mr. Nash can be said to have an "interest" in 1922 in what he never owned, because he "transferred" in 1910 the capital so skillfully increased by others, we are quite unable to perceive.

It is suggested that what was given in 1910 was a seed from which has grown a lusty plant, and the giver bears the same relation to the plant that he did to the seed. The analogy would be attractive, had the gift been a tract of land, which increased in value; but it fails completely with personal property, that changes in kind and nature by sale and new purchase.

The $500,000 worth of personalty under consideration was no part of the estate gross

or net of Mr. Nash, and it is noticeable that the statute does not attempt to say that it does so belong. At the utmost, and under the second above stated construction of the word "interest," it only directs that the "value" of the interest transferred shall be *included* in determining the tax on the estate of which the decedent died seized or possessed.

Thus it is seen that what this statute was held to mean by the decision below is this: An excise tax on the transfer of property occurring by reason of the death of A., payable only out of A.'s estate, and graduated by the size of that estate, is augmented by treating as part of A.'s property the property of another, three-fifths of which Mr. Nash never owned, and two-fifths of which he gave to that other 12 years before his death.

Thus we must first decide whether, within the meaning of the statute, Mr. Nash at the moment of his death had any *interest,* within the meaning of the act; we incline to hold that the applicable words should be treated technically, and that therefore there was no *interest* left from or arising out of the gift computed in 1910. We agree with the reasoning of Brewster, J., in Coolidge v. Nichols, supra, while feeling that nothing ultimate will be reached on this subject, until determination of the certiorari granted in Shukert v. Allen, supra.

[6] But, if the technical construction is wrong, then we must face the question whether it is within the power of Congress to do what has been done; i. e., use the property of A. as a measure for the tax to be laid upon B. Thus stated, it would seem impossible to support the tax; attack must be on the form of statement. We have at great length examined the assemblage of phenomena that make up this case, in order to ascertain what they amount to; and we think the foregoing an accurate statement of what the tax at bar really is.

If that description be accepted, while there is no classification of taxpayers, the tax itself is "arbitrary and capricious." Barclay v. Edwards, 267 U. S. 442, 450, 45 S. Ct. 135, 348 (69 L. Ed. 703). Further, a tax on a transfer by A., but measured by anything other than the estate of A., may be a duty or excise in form, but it is a palpable effort to tax something other than the transfer. In this case the effort is to tax in 1922 in respect of something untaxable in 1910. Cf. Lewellyn v. Frick, 268 U. S. 238 at 251, 45 S. Ct. 487, 69 L. Ed. 934.

If it be said that Congress might have taxed the 1910 transfer, and therefore can tax it even in 1922, the answer is that nothing

of the kind has been attempted. There is no tax now laid on the transfer of 1910, nor the property transferred. Could Congress in 1922 have laid a tax on Mr. Nash because he gave away $200,000 in 1910? If that be assumed as possible, it is not possible that the tax so laid, and computed on the gift, its credits and gains, could ever be an excise on the transfer.

But if the tax be laid as it actually has been, and called an excise on the transfer of something else, the name is merely false, there is no excise, and the exaction falls into the category of unapportioned direct taxes. We think this an effort to use a constitutional power as a hook on which to hang a cloak that conceals unconstitutional action. There is no real difference between disguising this direct tax under the name of a duty, and laying a tax in order generally to regulate some subject taxable, but not otherwise subject to national regulation. The real purpose is dealt with, notwithstanding the cloak. The Child Labor Cases, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, is the leading example.

It follows that we think there was no "interest" shown in Mr. Nash, justifying the tax laid; but, if the statute required the tax as laid, then the exaction was arbitrary and unconstitutional.

Judgment reversed, with costs.

HAND, Circuit Judge (concurring). I cannot see any escape from holding that section 402 (c) applies to the situation at bar, a conclusion in which the Circuit Court of Appeals for the Third Circuit concurs. Girard Trust Co. v. McCaughn, 11 F.(2d) 520. See, also, Coolidge v. Nichols (D. C.) 4 F. (2d) 112. "Possession or enjoyment" appears to me a phrase clearly intended to refer to the period when the remainders "fall in," not to that at which they "vest." Thus we cannot avoid considering the question of constitutionality.

I agree that under the guise of assessing a tax upon the transfer of Mr. Nash's estate Congress might not include other property on which at that time it could not levy an excise. Latterly, at least, the taxing power has been limited to its proper scope, despite formal disguises. The Child Labor Tax Case, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817; Hill v. Wallace, 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822; Lipke v. Lederer, 259 U. S. 557, 42 S. Ct. 549, 66 L. Ed. 1061; Regal Drug Co. v. Wardell, 260 U. S. 386, 43 S. Ct. 152, 67 L. Ed. 318. There was a strong intimation in U. S. v. Daugherty, 269 U. S. 360, 46 S. Ct. 156, 70 L. Ed. ——, that the Narcotic Act

would eventually fall for the same reason. It is quite true that these were cases of an effort to exercise general legislative powers under cover of taxation, but I can see no more reason to stop there than at the effort to include forbidden objects of taxation by including them in substance within taxes permissible in form.

The taxing powers of the states have been limited on just such grounds. Western Union Tel. Co. v. Kansas, 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355; International Paper Co. v. Massachusetts, 246 U. S. 135, 38 S. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617; Air-way Corporation v. Day, 266 U. S. 71, 45 S. Ct. 12, 69 L. Ed. 169; Alpha Cement Co. v. Massachusetts, 268 U. S. 203, 45 S. Ct. 477, 69 L. Ed. 916. Very directly in line is Frick v. Pennsylvania, 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058. Nor is there any reason for a distinction in this regard between federal and state powers. In the case at bar the effort appears to me to be quite as plain as it was in the cases just cited.

So I think that the validity of this tax must depend upon whether an excise could have been levied in 1918 upon the transfer by Mr. Nash in 1910 of the property in question, and whether it could be calculated upon the value of that property when he died in 1922. This is quite another question from whether a tax could at that time have been imposed upon the succession to the remainders, payable by the remaindermen or by the res. The law of the states is to the contrary. Matter of Pell, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791; Matter of Craig, 97 App. Div. 289, 89 N. Y. S. 971, affirmed 181 N. Y. 551, 74 N. E. 1116; Com. v. Wellford, 114 Va. 372, 76 S. E. 917, 44 L. R. A. (N. S.) 419; Hunt v. Wicht, 174 Cal. 205, 169 P. 639, L. R. A. 1917C, 961; Lacey v. State Treasurer, 152 Iowa, 477, 132 N. W. 843 (semble); United States ex rel. Tozer v. Probate Court, 102 Minn. 268, 113 N. W. 888. But those cases turned upon the Fourteenth Amendment, or its local equivalent, and the states are certainly more limited than Congress in taxation. How far Orr v. Gilman, 183 U. S. 278, 22 S. Ct. 213, 46 L. Ed. 196, and Chanler v. Kelsey, 205 U. S. 466, 27 S. Ct. 550, 51 L. Ed. 882, by implication support the doctrine, I need not inquire. Cahen v. Brewster, 203 U. S. 543, 27 S. Ct. 174, 51 L. Ed. 310, 8 Ann. Cas. 215, is in any case distinguishable.

At any rate it is possible to take another view, taxing succession to the enjoyment, though it had earlier become certain because of events happening before the law was pass-

ed. There must be some law to secure the succession when it takes place, and vesting is no more than an intermediate assurance of eventual enjoyment, which alone gives any substance to the right. How far Wright v. Blakeslee, 101 U. S. 174, 25 L. Ed. 1048, depended upon the fact that the remainders were contingent, stricti juris, it is not necessary to inquire, for this tax is not laid upon the remainderman or the res.

If it were necessary that an excise should be imposed upon the activity or privilege which determines the tax, I should at once agree that it could not operate upon one exercised or enjoyed before the law was passed. There would be no subject-matter to tax. But I cannot see that it need be so imposed, and cases like Billings v. U. S., 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596, U. S. v. Bennett, 232 U. S. 299, 34 S. Ct. 433, 58 L. Ed. 612, Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, and Brushabar v. Union Pac. R. R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713, seem to me to establish the contrary. I can find no helpful definition of excise, but there seems no reason why it should not be imposed upon individuals personally, merely because of some activity in which they have engaged or privilege which they have enjoyed. These will serve to define the class to be taxed, and the tax need not necessarily be direct, for that is purely a historical and conventional question. Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969.

And so I am not prepared to say, if section 402(c) had merely included in Mr. Nash's estate the property which he conveyed to the trustees in 1910, at the value it then had, that it would not have been valid. But it does not do that. In substance it imposes a tax upon the settlor, measured by the value of property at his death, over which he has parted with all control, perhaps, as here, long since. As to transfers made after the law went into effect I have nothing to say; one may insist that settlors take their chances. But as to those made before the law was passed it appears to me that the result is too whimsical to stand. There are settlements which the settlor outlives for 30 or 40 years. There is no limit to the increase in the value of land, for example, in such a period; it may easily be fiftyfold and the tax leave the settlor destitute when he dies. Conversely, another settlor may escape altogether. Such a tax is fixed by the mere sport of fortune. It has no more relation to the possessions or conduct of the taxpayer than if he were taxed upon the subsequent value of property he had sold outright, or his estate was doubled because he died on Wednesday. Such a law is far more capricious than merely retroactive taxes. Those do indeed impose unexpected burdens, but at least they distribute them in accordance with the taxpayer's wealth. But this section distributes them in accordance with another's wealth; that is a far more grievous injustice.

But it is answered that this result goes only to the equal assessment of the tax and must rest upon the Fifth Amendment, which does not apply to federal taxation. I quite agree that the Supreme Court has in many cases implied or said as much. Veazie Bank v. Fenne, 8 Wall. 533, 19 L. Ed. 482; Treat v. White, 181 U. S. 264, 269, 21 S. Ct. 611, 45 L. Ed. 853; McCray v. U. S., 195 U. S. 27, 81, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561; United States v. Doremus, 249 U. S. 86[1]; Billings v. U. S., supra, 282 (34 S. Ct. 421); Flint v. Stone Tracy Co., supra, 158 (31 S. Ct. 342). If the rule is to be taken unconditionally, taxpayers may be selected by lot and assessments may vary with the price of wheat. Perhaps it would have been necessary to go so far, had it not been for the opinions in Brushaber v. U. S., supra, 24, 25 (36 S. Ct. 236), and Barclay & Co. v. Edwards, 267 U. S. 442, 450, 45 S. Ct. 135, 348, 69 L. Ed. 703, and the strong intimations in Lewellyn v. Frick, 268 U. S. 238, 251, 252, 45 S. Ct. 487, 69 L. Ed. 934. But these make it clear that the power is not utterly absolute. A tax may be so "arbitrary and capricious," its "inequality" so "gross and patent," that it will not stand, and as I can think of no other pertinent constitutional limitation, but the Fifth Amendment, it seems to me that the rule is not as stark as the defendant argues. If there be any limit whatever, I own I cannot, except in fancy, think of a case more plainly beyond it than this.

I concur.

[1] 39 S. Ct. 214, 63 L. Ed. 493.