**FIDELITY TRUST CO. et al. v. McCAUGHN, Internal Revenue Collector.**

(District Court, E. D. Pennsylvania. September 23, 1926.)

No. 10722.

1. **Internal revenue ⨠8(6)—"Interest," used in statute taxing passing of decedent's property, means use of physical thing as well as estate therein (Revenue Act 1918).**

Word "interest," in Revenue Act 1918 (40 Stat. 1057), imposing tax on passing of interest in decedent's estate, primarily means, when applied to realty, an estate in land, and describes something title to which passes as part of a decedent's estate, but, as used in statute, coupled with words "in enjoyment" and "in possession," means use of the physical thing to which the "interest" relates.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interest.]

2. **Internal revenue ⨠8(11)—Grant to children and their descendants for life of survivor, and thereafter for 21 years to descendants, remainder to such descendants, held not taxable as in contemplation of death (Revenue Act 1918).**

Grant of interest in property to grantor's children and their descendants for life of survivor of original grantees, and thereafter to descendants of original grantees for 21 years longer, with remainder to such descendants, reserving no interest in grantor, who parted with present possession and enjoyment of property, except power to revoke, held not taxable as transfer in contemplation of, or intended to take effect in possession or enjoyment at, or after, death of grantor, within Revenue Act 1918 (40 Stat. 1057).

3. **Courts ⨠347(5)—By analogy to local statute, federal court refuses to decide law questions raised in favor of defendant on statutory demurrer (Practice Act Pa. 1915 [Pa. St. 1920, § 17181 et seq.]).**

By analogy to Practice Act Pa. 1915 (Pa. St. 1920, § 17181 et seq.), federal court on statutory demurrer will refuse to decide questions of law raised in favor of defendant, with leave to file an affidavit of defense to fact merits of statement of claim within the time prescribed by the act.

At Law. Action by the Fidelity Trust Company and others, coadministrators of the estate of Sarah Brooke Dolan, deceased, against Blakely D. McCaughn, Collector of Internal Revenue for the First District of Pennsylvania. On statutory demurrer. Decision in accordance with opinion.

Clement B. Wood, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Atty., of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. [1] Girard Trust Co. v. McCaughn (C. C. A.) 11 F.

(2d) 520, settled for this circuit (whatever views may be entertained elsewhere) the meaning of the tax act (40 Stat. 1057) affecting the passing of the estate of a decedent. The act of Congress employs the word "interest." This word is a word of art, and primarily means, when applied to real estate, an estate in land, and the impulse of all lawyers is to so interpret it when used to describe something the title to which passes as part of a decedent's estate. It must be recognized, however, that, when connected with the words "in possession," and more emphatically the words "in enjoyment," the word "interest" might well have the meaning which it commonly conveys to the lay mind of usufruct, in the sense of having the use of the physical thing to which the "interest" relates. The District Court had taken the view that the employment of the word "interest" as the equivalent of an estate in land, in contrast with the meaning of possession or enjoyment of the physical thing, was so well known that Congress would not have used the word "interest," unless it had intended it to have this meaning.

The Circuit Court of Appeals for the Third Circuit, however, held that other expressions in the act were controlling, and that a vested estate in fee in remainder after a life estate in possession was an "interest" which "passed" at the death of the life tenant to the remainderman "in possession and enjoyment," within the meaning of the act of Congress. In other words, the intent and purpose of Congress was to exact the tax, if the physical possession and enjoyment passed coincidentally with the death of the decedent, and that this purpose could not be thwarted by the creation of distinctions which had existence only as mental concepts. The weight of authority is on the side of this view. How nearly, however, the two views are to being in balance, is illustrated by the Case of Nash Estate (Frew v. Bowers) 12 F.(2d) 625 (C. C. A. Second Circuit), in which of the two opinions concurring in the judgment rendered one inclines to one view and the other to the opposite on this feature of the case. Some of the cases are viewed in a double aspect. One relates to the construction of the statute to which we have referred; the other to the constitutional question which arises if the statute is construed in accordance with what we have called the now prevailing view.

There is a clear distinction between directly taxing a thing according to its value and imposing an excise duty upon the exercise of a right or privilege and measuring the duty imposed by the value of the thing which is concerned in the exercise of the privilege. The distinction, however, often seems purely artificial, and all real difference between the exaction of the two kinds of taxes to disappear in their practical application. The denial to Congress, however, of the power to impose "capitation or other direct taxes" without apportionment, which is (except as to incomes) left untouched by the Sixteenth Amendment, and the arbitrary character of a tax exaction which measures one man's tax by the value of another man's property, makes the distinction of importance.

Just what is the nature of the tax, with which this case concerns itself, has not been clearly authoritatively determined. It is frequently given specifically the name of "estate tax." This means, however, nothing more than an allusion to the circumstance that it happens under existing tax laws to be exacted in connection with the estates of decedents. This name cannot be accepted as a substitute for a definition of the nature of the tax. The view commonly taken, and which may be considered as the accepted view until we are otherwise instructed, is that it is an excise tax imposed on the exercise of the privilege of transmitting by one's death an estate. Whether it is this, or the like privilege of receiving and enjoying such estate, would not seem to matter in the phase of the case we are now considering, because, if there is no "interest" or estate to be transmitted through or by the death, there is by the same token none to be thus received. If by the falling in of a life estate (or one for years) nothing "passes" to the remainderman, but he then had (in the case of a vested remainder in fee after an estate in possession) only what he had before, to wit, the right to the "possession and enjoyment" when the estate in possession came to an end, the thought thrusts itself upon the mind that the imposition of a tax upon the estate of the deceased life tenant, measured by the value of that of which the remainderman comes into the "possession and enjoyment" coincident with the death, may result in a practical confiscation of the entire estate of the decedent.

The hardship of this is emphasized if the estate in remainder was created before the taxing act was passed. Such a tax would seem to be an excise, duty, or impost exacted for the exercise of the privilege of dying, measured by the value of the benefit which happened coincident with the death to have been received by another. Whatever the legal merits of the constitutional question thus suggested, the question arose in the McCaughn Case, supra, and was ruled against

the taxpayer, although it was not discussed. We see no escape from the conclusion that the cited case rules this, unless it can be distinguished on its facts.

[2] The contrasting features in the respective fact situations may profitably be listed and the differences noted as follows:

1. In the cited case, the life estate was reserved to the grantor or creator of the trust; in the instant case, a life interest was granted to children of the grantor and their descendants. The difference to be noted is that the grantor in one case retained an interest for life; in the other, she parted with every interest. The grantor thus parted with the physical "possession" and actual "enjoyment" of the property at the time of the grant to others, and did not defer this transfer until the time of her death. The argument based upon this is that such a conveyance could not be said to have been "in contemplation of" or intended to take effect in possession or enjoyment at or after "the death" of the grantor. Such a grant might, of course, in one sense be made "in contemplation of death," and almost always like grants are, but it could not be said to be "intended to take effect" at or after the death of the grantor. The language of the statute has always been construed to mean gifts causa mortis, in the sense that the "possession" and "enjoyment" are withheld from the grantee until death has released the grip of the grantor. By no court of the United States has the language of the statute been held to include absolute gifts inter vivos, although the grant may be made to those who were the expected heirs, or were the expected or intended testamentary beneficiaries, of the grantor, had no grant been made, and in that sense be an anticipation of such testamentary disposition.

The obstacle to taking a different view is that an owner of property could then make an out and out gift to strangers, but could not make one to those who had natural claims upon his bounty, without imposing upon his estate a liability to tax. The case nearest in point arose under a state law. There the then owner of land leased it to his son for the life of the lessor, and then conveyed it to his daughter, subject, of course, to the lease. The estate was subjected to the payment of the tax. This must have been upon the ground that the "possession" and "enjoyment" of the grant by the remainderman was postponed until the death of the grantor. Here in no sense, either in legal concept or in actual fact, was this true. The only feature in which there is even a resemblance is in the provision of the grant for what may be called the enlargement of the life interest of the grantees to an unrestricted fee. This happened to be made coincident with the death of the grantor. In its bearing upon the question presented, we see no significance in this. For present purposes the grant may be deemed to have been one to the grantees for their lives, and to the descendants of those who might die for the life of the survivor of the original grantees, and then for all the descendants of the original grantees for 21 years longer, with remainder to such descendants. The sole purpose of a reference to the death of the grantor was to define the class of ultimate beneficiaries.

2. The grant expressed the reservation of a power to revoke. Counsel for the United States frankly concedes this reservation has no bearing upon the question to be decided.

All phases of the question before us have been so fully considered in the cited cases that there is nothing to be added. We content ourselves, in consequence, with a statement of the conclusions reached, which are (1) that the instant case is not within the ruling in the case of Girard Trust Co. v. McCaughn, supra; and (2) that the grant in question here was not "in contemplation of or intended to take effect in possession or enjoyment at or after" the death of the grantor and creator of the trust with which we are concerned. Inasmuch as this means that the estate here is not within the taxing act, the constitutional questions discussed do not arise.

[3] By analogy to the Pennsylvania Practice Act of 1915 (Pa. St. 1920, § 17181 et seq.) we refuse to decide questions of law raised in favor of the defendant, with leave to file an affidavit of defense to the fact merits of the statement of claim within the time prescribed by the act.