## GIRARD TRUST CO. et al. v. McCAUGHN, Collector of Internal Revenue.

(District Court, E. D. Pennsylvania. February 3, 1925.)

No. 11084.

1. **Internal revenue ⊗⟹8—Question of what is an interest in land determinable by law of state where land located.**

For purpose of tax under Act Cong. Feb. 24, 1919, § 402 (Comp. St. Ann. Supp. 1919, § 6336¾c), question of what is an interest in land in Pennsylvania is determinable by law of Pennsylvania.

2. **Internal revenue ⊗⟹8—Land conveyed in trust held not part of decedent's estate for tax purposes; "land."**

Land conveyed by decedent in trust for herself for life, with remainder to another, held not part of decedent's estate, nor within Act Cong. Feb. 24, 1919, § 402 (Comp. St. Ann. Supp. 1919, § 6336¾c), providing that "value of the estate," for purposes of the tax, should include value of "any interest" with respect to which decedent had "at any time created a trust * * * to take effect in possession or enjoyment at or after" death of decedent; "land" being defined as the concept of the right to appropriate a described portion of space, not a corporal, physical, tangible thing.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Land.]

At Law. Action by the Girard Trust Company and I. Minis Hays, executors of the estate of Annie Bradford, deceased, against Blakely D. McCaughn, Collector of Internal Revenue for the First District of the State of Pennsylvania. On motion for judgment. Plaintiffs held entitled to recover, and entry of formal judgment authorized.

Joseph Carson and Hampton L. Carson, both of Philadelphia, Pa., for plaintiffs.

George W. Coles, U. S. Atty., and L. LeRoy Deininger, Asst. U. S. Atty., both of Philadelphia, Pa., and Thomas H. Lewis, Jr., Sp. Atty. Department of Internal Revenue, of Washington, D. C., for defendant.

DICKINSON, District Judge. The question raised is a demurrer question. It is the lawfulness of a tax exaction. It was admittedly lawful if certain property was properly included in the "value of the estate," which measures the sum of the tax. This takes us to this property. What is it?

The physical things were two pieces of real estate situate on Walnut street, Philadelphia. This real estate was under date of April 17, 1916, conveyed by the then grantor (now the decedent) to the Girard Trust Company et al. Admittedly all interest, right, or title of any kind which she had in the real estate was at an end when she died. She had made a will, which following her death was duly probated. Of this will the plaintiffs are the executors. The will, however, deals in no way with this real estate, for the reason, already stated, that all interest of any and every kind which the testatrix had formerly had in it ceased at her death. The tax, however, which her estate was required to pay, was fixed by measuring it by the value of her estate as if she had died seized of this real estate and it had passed at her death as part of her estate.

This takes us back to the deed of conveyance. Aside from the taxing statutes, and assuming that no such laws had ever been enacted, an analysis of this conveyance discloses the following as its effect in law and fact: What is commonly called the legal title passed to the grantees. This title, however, included no beneficial ownership in the grantees. Their title was that of trustees. The terms of the trust were (or included) that the title should be held and used so that the rents, issues, and profits thereof should be paid to the grantor, or, at her election, she should be permitted to occupy the premises as long as she might live. In short, the grantor reserved or became the beneficial owner of a life estate in the real estate premises. This life estate was qualified or defined by the obligation of the life tenant or grantor to keep down incumbrances, by paying for the upkeep of the premises if the income was insufficient for this purpose. The conveyance was made upon the "further trust upon the death of said grantor to assign, transfer, and convey unto Emma Wood Hays, * * * her heirs and assigns, absolutely and in fee," the premises conveyed, or any property which under the powers given the trustees might be substituted for the property conveyed. This means that the title to the real estate was held by the grantees in trust for the decedent, who held therein a particular estate for life, and for Mrs. Hays for an estate in remainder in fee.

The defense to the claim for the return of the tax payment is that the taxing act measures the sum of the tax properly payable by the value of the decedent's estate

plus the value of that of which the decedent had dispossessed herself in her lifetime, which dispossession was not to become effective until her death. The conveyance of an estate in remainder after the death of the grantor, or the conveyance of property reserving a life estate in the grantor, is claimed to be (although property which is not a part of the decedent's estate) nevertheless the kind of property which is to be included in the measure of the tax.

This takes us to the act of Congress. Act Feb. 24, 1919, § 402, 40 Stat. 1097 (Comp. St. Ann. Supp. 1919, § 6336¾c). Its pertinent language is that there is to be added to that of other property the value of "any interest" which the decedent had in any property "with respect to which" the decedent had "at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after" the death of decedent. The real difficulty in all cases of this general type is that words are used in wholly different senses.

The word "property" is one of them. There are physical things, and the concept of the right of property in things. The word "property" is indiscriminately used to convey the thought of either. When the word is used, in which of these two senses is it used? Inasmuch as this grantor reserved to herself the right and power to occupy as long as she lived the premises, the title to which she had conveyed away, it can be said with perfect truth that the grant to the remainderman was "intended to take effect in possession or enjoyment" *of the physical premises* "after the death" of the grantor. Inasmuch, however, as (ignoring the trust features) there was an absolute conveyance in presenti of an estate in fee in remainder to the grantee, it can be said with equal truth that the interest or estate or "property" granted to the remainderman *at once* took effect in both possession and enjoyment, and was not postponed until the death of the grantor.

We do not see that the circumstance that the conveyance took the form of a conveyance of the legal title in trust, nor that the trustees are directed to convey the legal title to the remainderman upon the death of the grantor, works any real difference in results. Disrobed of all its form features, what the deed of conveyance did was to vest in the remainderman an estate in fee (that is, all the estate and interest and all the right of ownership which a citizen of Pennsylvania can have in real estate) in remainder after a particular life estate had

been carved out of it. The direction to the trustees to convey to the remainderman the legal title was under the law of Pennsylvania wholly superfluous. The trust was then a dry trust, and the statute of uses made as effective a conveyance of the legal title as the trustees could do. When, and indeed before, the trustees made the contemplated conveyance, it had already been made by the law. The act of Congress does not, however, use the word "property" of common speech, but the word "interest," which is a word of legal import and a word of art. What was the "interest" which (before the grant) the grantor had in the real estate premises? Her "interest" or estate was a fee simple, the full and absolute ownership. This gave her several rights of property. One was to possess and enjoy the physical premises for life or as long as she chose, another was to part with her ownership for a consideration if she so chose, another was to pledge it for a loan, and still another was to transmit it to her heirs or to devise it to whom she chose. All of these rights, except only the first, she granted absolutely and irrevocably to another. The grant was not in futuro, but in presenti. What she granted was real estate. This is not a thing, but a right, interest, or estate in land, and what has become so far incorporated with land as to be a part of it. The possession and enjoyment of this estate or interest was immediate, and not postponed to the time of the death of the grantor, because admittedly the estate conveyed was a vested interest.

These distinctions are so well known, and indeed so obvious, that they must have been in the legislative mind. The thought at once obtrudes that if Congress had meant that for which the defendant contends, it could have been and would have been unmistakably expressed. What is expressed is, as already quoted, "any interest." Here the "interest" was in land. Land in its law phase is not a corporal, physical, tangible thing. It is a concept—the concept of the right to appropriate a described portion of space. It is associated, of course, with material things, which have some more or less permanent relation to this space. What is commonly called ground is one of them. Brick and mortar, in the form of a building reared upon the ground, is another. Almost anything in the form of what is called personal property may (coupled with the concept of a fixture) be thus associated with, and in this sense become incorporated

with, the concept of land. The land would remain, if everything upon the ground were razed and removed. It would remain, even if it were possible in some cataclysm of nature that the very ground itself should disappear. So it is with the "possession and enjoyment" of any "interest" in land. This "possession and enjoyment" may be and commonly is unconnected with any physical contact with the material thing. The physical thing itself is divisible by lines of cleavage in any direction. The right, estate, or interest is likewise divisible. Whatever the interest is, it passes at the time of the grant, whenever it is what is called vested, and the grantee is in the "possession and enjoyment" of the right, although he may not touch the thing to which the right relates.

[1, 2] This is true of this remainderman. She never received anything more than passed to her by the grant. She could not have been given anything more in what she had by any deed or will or other instrument of conveyance. She could, of course, have been granted something else, as, for instance, this particular estate for life; but this would have been another "interest" in the real estate. There is not merely a distinction, but a real difference, between the transfer of an interest and the ending of it by its own limitations. Under the facts of this case this particular life estate ended with the life of the grantor, but in no real sense did it pass to the remainderman. It no more added to what the remainderman already had than the ending of the term of a lease adds to the estate or interest of the owner of the real estate. It is, of course, true that there is an accompanying or incidental practical result or consequence of the death of the life tenant, which may be and usually is of benefit to the remainderman, just as the "falling in" of leases may be of benefit to the owner. This is not, however, always even the practical result. If rentals were higher when the rent was reserved than at the expiration of the lease, the landlord owner might well regret the close of the term. So, also, when (as here) the life tenant had assumed the obligation to keep down incumbrances, by paying taxes and other current charges, the remainderman might under some conditions be worse off by the ending of the life estate. The expression "land poor" is often more than a phrase. It may be a truth as well as a fact. What is an "interest" in land is a question of land law, which is determined here by the law of Pennsylvania. That un-

der the land law of the state the "interest" of this remainderman was a vested interest, the "possession and enjoyment" of which passed to her before the death of the life tenant, is undoubted. A sufficient citation is the case of Houston's Estate, 276 Pa. 330, 120 A. 267.

It must, however, be conceded that this is not altogether the question now presented. The question rather is: What did Congress mean to be the measure of this tax? Did it mean that, when an interest was created which did not pass to the grantee until the death of the grantor, this should be included in the measure of the tax, or did it mean that, whether an interest passed by the grant or not, the thing in which the estate was given should be included, if the grantor reserved a life estate to himself or herself? The conclusion indicated is that, if Congress had meant the latter, it would have said so.

Two other features have been brought into the discussion. It happened in the instant case that the remainderman died before the life tenant, and this "interest" of the remainderman figured in the measurement of the tax which her estate paid. Another fact is that they died within five years of each other. These features we pass without comment. It only remains to inquire whether the conclusion indicated is in accord with the decided cases. Houston's Estate, supra, is, of course, not authoritative upon the tax question before us. It has none the less great informative value.

We have been referred to a number of cases, some of which we do not deem to be in point; others turn upon the meaning of a statute in respect to whether what has passed to a grantee is to be viewed from the standpoint of its practical results, affecting the physical enjoyment of the subject-matter of the grant, or whether it is to be viewed from the standpoint of the legal estate or "interest" which has passed. These latter cases are helpful, but not authoritative. Houston's Estate, supra, is one of them. The cited cases are: Todd's Estate, 237 Pa. 466, 85 A. 845, 43 L. R. A. (N. S.) 869; Reish v. Commonwealth, 106 Pa. 521; People v. Danks, 289 Ill. 542, 124 N. E. 625, 7 A. L. R. 1023; Vanderbilt v. Eidman, 196 U. S. 480, 25 S. Ct. 331, 49 L. Ed. 563; Blodgett v. Union & New Haven Trust Co., 97 Conn. 405, 116 A. 908; Schuh's Estate, 66 Mont. 50, 212 P. 516; Fulham's Estate, 96 Vt. 308, 119 A. 433; Masury's Estate, 28 App. Div. 580, 51 N. Y. S. 331; Douglas County v. Kountze, 84

Neb. 506, 121 N. W. 593; Keeney v. Comptroller, 222 U. S. 525, 32 S. Ct. 105, 56 L. Ed. 299, 38 L. R. A. (N. S.) 1139; Safe Deposit v. Tait (D. C.) 295 F. 429; Shukert v. Allen (D. C.) 300 F. 754. In addition there is the T. D. case of Mercantile Trust Co. v. Hellmich (oral opinion).

In some of these cases the grant was held to be testamentary in substantial effect, and in others not. We are thus brought back every time from the perusal of any case to the effect of this deed of conveyance. The test applied in Fulman's Estate, supra, and the accompanying expression is very illuminating. It is whether the estate or interest or property or right which passed to the grantee "took effect independently of the death of" the grantor, and whether the grantee had the uncontrolled right or power to dispose of his "interest" at any time after the grant. Such was the effect of the grant here in question.

We think the plaintiff may recover back the tax paid, but to give definiteness of date to the judgment none is now rendered, but formal judgment may be entered in accordance herewith.