## FARMERS' LOAN & TRUST CO. v. BOWERS, Collector of Internal Revenue.

(District Court, S. D. New York. September 20, 1926.)

**I. Trusts ⬅⟖140(I).**

Under trust instrument retaining in founder complete power of disposition of property and its usufruct, beneficiaries had until his death nothing more than expectancy.

**2. Internal revenue ⬅⟖8(II)—Trusts under instrument retaining in nonresident founder complete power of disposition, not taking affect till his death were subject to estate tax (Revenue Act 1918, §§ 401, 402 [Comp. St. §§6336¾b, 6336¾c]).**

Under trust instrument by nonresident alien, wherein founder retained complete power of disposition, trust did not take effect in possession until his death, and was subject to estate tax under Revenue Act 1918, §§ 401, 402 (Comp. St. §§ 6336¾b, 6336¾c).

**3. Internal revenue ⬅⟖8(II).**

Remainders of trust, in which founder reserves control of subject-matter, are so ambulatory as to render them testamentary in character and within tax liability of estate.

**4. Constitutional law ⬅⟖190.**

Retroactive feature of Revenue Act 1918, §§ 401, 402 (Comp. St. §§ 6336¾b, 6336¾c) is lawful and applicable to trusts created in instruments prior to enactment of statute, but not final until founder's death after statute became law.

**5. Internal revenue ⬅⟖8(5)—Money in trust agreement constituting marriage settlement, being subject to revocation by founder, was subject to estate tax (Revenue Act 1918, §§ 401, 402 [Comp. St. §§ 6336¾b, 6336¾c]).**

Where trust agreement transferring money as consideration for marriage settlement was

subject to revocation by founder of trust, it did not become such a fixed irrevocable charge on corpus of trust as would preclude taxation under Revenue Act 1918, §§ 401, 402 (Comp. St. §§ 6336¾b, 6336¾c).

In Equity. Suit by the Farmers' Loan & Trust Company, as trustee under a deed of trust made by William Waldorf Astor (now deceased), against Frank K. Bowers, United States Collector of Internal Revenue for the Second District of New York. On defendant's motion to dismiss the complaint. Complaint dismissed.

Geller, Rolston & Blanc, of New York City (Henry C. Eldert and Russel L. Bradford, both of New York City, of counsel), for plaintiff.

Emory R. Buckner, of New York City (Sherwood E. Hall, Asst. U. S. Atty., of New York City, of counsel), for defendant.

KNOX, District Judge. This suit is before the court upon defendant's motion to dismiss plaintiff's complaint, it being contended that the pleading fails to state a good cause of action. Plaintiff's statement of the facts, as contained in its brief, may be accepted, on the whole, as accurate, and it will, with a few eliminations and amendments, be incorporated herein as the basis of decision.

William Waldorf Astor, on May 25, 1916, transferred to the Farmers' Loan & Trust Company, a New York corporation, as trustee, stocks, bonds, and cash, which stock, bonds, and cash were to be held, invested, and reinvested by the said trustee, and the income therefrom (after paying from such income the taxes and other incidental expenses chargeable thereto) *was to be distributed to one or more of the issue of William Waldorf Astor, or the wife or husband of such issue, or to any charity or charities, as the said William Waldorf Astor should, by an instrument under his hand, and delivered to the said trustee, instruct and direct,* and in the absence of such direction it was provided that the trustee should pay or apply such income to such charities in existence in the state of New York as the said trustee, in its absolute discretion, might think proper.

It was also provided in the indenture that, upon the death of William Waldorf Astor, the trustee should distribute the principal then in its hands as trustee to and among the issue of William Waldorf Astor, in such shares or in such manner, permitted by the laws of New York, as William Waldorf Astor might, by his will or codicil specifically referring to such power, appoint, and, in default of any such appointment, then to

and among his issue then surviving, in equal shares. *It also was provided in the said trust indenture that said William Waldorf Astor, with the written consent of the trustee, which consent the trustee had the absolute discretion to grant or withhold without in any case incurring any liability in that behalf, might modify or revoke the said instrument and the trust thereby created, either in whole or in part.* The plaintiff accepted the trust and has continued to act under and is now acting as trustee.

Subsequently to the creation of this trust, and on or about July 7, 1916, the said Astor executed and delivered to the said trustee an instrument under his hand and seal, by which instrument he directed and instructed the trustee in respect of the application of the income of the trust fund, and provided one half of the said income be applied to the use of the three sons then living of Waldorf Astor (a son of the grantor), and the other half be paid to John Jacob Astor (a son of the grantor) subject to the payment of $30,000, or £6,000 sterling annually, to Violet Mary Mercer Nairne, in case the intended marriage of the son, John Jacob Astor, and Violet Mary Mercer Nairne, was consummated. There were other provisions in the case of the death of any of the grandsons of the grantor or his son before the death of the grantor, which are more specifically set out in Exhibit C of the complaint. These provisions covering income were never changed.

On or about September 8, 1916, the federal Congress enacted, and the President approved, the Revenue Act known as the Revenue Act of 1916 (39 Stat. 756), which Revenue Act carried with it, for the first time, a tax upon the transfer of estates of decedents. Subsequently thereto, and on or about December 26, 1916, the said William Waldorf Astor, duly executed and delivered to the said trustee another instrument under his hand and seal, in and by which he, with the consent in writing of the said trustee, as required by said indenture, modified the said trust indenture, so as to provide (but only to that extent) for the payment out of the said trust fund of all taxes, if any, payable on or by reason of the death of the said William Waldorf Astor, upon or in respect of the said trust fund or any part thereof, and such English death duties as might be imposed upon his estate.

Subsequently thereto, and on or about August 15, 1919, the said William Waldorf Astor, duly executed and delivered to the said trustee a further instrument under his

hand and seal by which he, with the consent in writing of the said trustee, as required by said indenture of trust, modified the said indenture of trust, by providing, upon the termination of the trust, that the trustee should distribute the capital of the trust fund then in its hands to and among the issue of the grantor, in such shares, or in such manner, as permitted by the laws of the state of New York, as the grantor should by will or codicil specifically referring to that power appoint, and in default of such an appointment by will or codicil, the trustee should divide the capital of the trust fund into two portions of equal value, provided the grantor during his lifetime should have paid to the trustee or trustees of the English indenture of covenant and settlement made on the marriage of his younger son, John Jacob Astor, with Violet Mary Astor (formerly Violet Mary Mercer Nairne), the sum of £800,000, or $4,000,000, covenanted in the English indenture of covenant and settlement to be paid by the grantor to said John Jacob Astor, and, if such sum had not been paid, then one or the first portion of the capital of the trust fund should be less than the net value at the time of the death of the grantor of the second or other portion, by so much of the principal sum of £800,000, or $4,000,000, as should not have been so paid by the grantor during his life, and should distribute that portion of the said trust fund to all or any of the sons of his elder son, Waldorf Astor, living at the death of the grantor, if more than one, in equal shares; in default of any such son, living at the death of the grantor, if more than one, in equal shares; in default of any such son, living at that time, then to the person or persons more specifically set out in Exhibit E attached to the complaint and made a part thereof. The other or second of the said portions of the capital of the said trust was to be distributed to John Jacob Astor, a son of the grantor, unless he should predecease the grantor, then as more specifically provided for in the said Exhibit E attached to the complaint.

William Waldorf Astor died on October 18, 1919, without having altered or amended the said indenture of trust, except as hereinbefore set out, and died leaving an American will, which did not exercise the power of appointment. He also left an English will and an Italian will. There were left upon the death of William Waldorf Astor, surviving him, his two sons, Waldorf Astor and John Jacob Astor, and four sons of the said Waldorf Astor.

The said William Waldorf Astor was a subject of the kingdom of Great Britain. He died leaving certain property physically situated and located, or having a situs, within the United States, of the value of $1,323,706.69, which was disposed of by his American will. The total amount of his debts and administration expenses amounted to $1,119,997.80, of which sum, under and by virtue of the Revenue Act of 1918, there was deductible from the gross estate (for purposes of the federal estate tax) within the United States the sum of $132,370.67, which left a net estate subject to the federal estate tax of $1,191,336.02.

The Farmers' Loan & Trust Company qualified as executor of the American will of decedent, and in accordance with the law duly prepared the return on form 706 for the Commissioner of Internal Revenue and the defendant, and upon assessment paid the tax indicated as payable thereunder of $70,633.60. Thereafter the Commissioner of Internal Revenue and the defendant audited the return of the executor and placed a value upon the property composing this trust fund, which was not included in that return, though reference was made and full information given in respect thereof, of $19,788,938.73, and thereupon assessed an additional tax not only against the Farmers' Loan & Trust Company, as trustee, under a certain deed of trust made by William Waldorf Astor, dated May 25, 1916, and as trustee under other trusts, of $15,961,321.34, of which tax $4,947,234.68 was computed by including as a part of the estate of William Waldorf Astor, the value of this trust fund as determined by the Commissioner of Internal Revenue and the defendant, which value as stated amounted to $19,788,938.73.

The tax assessed was paid by the trustee (the plaintiff herein), because, for one reason, the executor—that is, the estate of William Waldorf Astor—did not have assets with which to pay the tax, inasmuch as the total gross estate amounted only to $1,323,706.69. Another was that the trust deed provided that all taxes should be paid from the trust funds. The total amount of the tax paid upon the additional assessment against the plaintiff, and against the executor, and against the Farmers' Loan & Trust Company, as trustee under other deeds of trust, as assessed by the assessment of the 11th day of July, 1922, was $15,769,069.86. Subsequently the said plaintiff was called upon to pay, and, under protest and duress, did pay on September 17, 1923, an additional tax assessed against the said executor and

against the said plaintiff and against the Farmers' Loan & Trust Company, as trustee of other trusts, of $13,348.74, which additional tax was due to the increase in the value of the assets composing this trust fund by the sum of $221,896.95, and which made the full value of this trust, as determined by the Commissioner of Internal Revenue and the defendant, $20,010,833.68.

Subsequently the said plaintiff, acting in its own behalf and jointly with the executor, and jointly with the Farmers' Loan & Trust Company, as trustee of other trusts, filed with the Commissioner of Internal Revenue, through the said defendant, a claim for refund of the said money and petitioned for the refund of the said tax. This claim for refund, which is applicable to both assessments of additional taxes, the Commissioner of Internal Revenue and the defendant rejected, and refused to refund and repay the said tax. Thereupon the plaintiff instituted this action for the recovery of the sums so paid, which were chargeable against, and paid under duress and protest by, this plaintiff in the sum of $4,971,560.61, together with interest.

It is also alleged in the complaint that William Waldorf Astor died a nonresident alien of the United States, and that the beneficiaries under the trust instrument were all nonresident aliens, and that none of them was engaged in business within the United States at the time of the death of William Waldorf Astor, and that therefore, under the Victory Liberty Loan Act (chapter 100, 40 Stat. vol. 40, § 2, No. 1, 65th Congress, p. 1311 [Comp. St. § 6829ll½]), the amount of Liberty and Victory Bonds of the United States of America, composing a part of the said trust fund, were not subject to the tax.

The authority under which the defendant assumed to collect the tax sought to be recovered is to be found in the following sections of the Revenue Act of 1918, effective February 24, 1919:

"Sec. 401. That [in lieu of the tax imposed by title II of the Revenue Act of 1916 as amended, and in lieu of the tax imposed by title IX of the Revenue Act of 1917] a tax equal to the sum of the following percentages of the value of the net estate [determined as provided in Section 403] is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act, whether a resident or nonresident of the United States: [Here follow the applicable rates.]

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title." Comp. St. §§ 6336¾b, 6336¾c.

The large sum of money dependent upon the final outcome of this suit, and the uncertainty of the questions that are presented, would, under ordinary circumstances, justify a more extended discussion of the case than I shall give it. But the matters of general law that are here involved have already received attention by a number of courts. The result has been far from uniform, and anything that I may say will not make it so. Until the Supreme Court speaks, the law is, and will remain, in a state of splendid confusion. Therefore I shall not undertake to analyze the prior decisions.

[1, 2] In the first place, the beneficiaries of the remainders created by the trusts set up by Mr. Astor, whatever their technical status, had, until the occurrence of his death, nothing more than an expectancy of the possession and enjoyment of his bounty. The reason was that the founder, subject only to the possibility, probably more apparent than real, that the trustee might not assent to such change in the trusts, or a revocation thereof, as he might wish to make, retained complete power over the disposition of the property and its usufruct. In suggesting that the likelihood of the trustee withholding its consent to a proposed change or revocation of the trust was more apparent than real, there is no intention to asperse or criticise the plaintiff. But it is so hard to conceive of any reason that would have impelled the trustee to withhold consent, had it been requested, that I regard the provision which predicated a right of change or revocation of the trusts upon the exercise of the trustee's discretion as of no present legal effect.

It is noteworthy that the trustee did give its consent to changes in the trusts whenever and as often as they were suggested; and there was no good cause why it should not do so then and at any time. Aside from acting faithfully in its stewardship so long as the same should continue for the benefit of particular persons and institutions, the trustee owed no duty to those beneficiaries to see to it that they should remain in Mr. Astor's favor; and, granting full performance by the trustee of any obligations that might from time to time be dischargeable, its chief concern was to satisfy and meet the wishes of the man who had intrusted it with the management of securities of large value. Had it failed to do so, there is slight doubt that Mr. Astor would have had recourse to the fifth paragraph of the indenture of May 25, 1916, wherein he reserved the right at any time to *remove* the trustee therein named, and to appoint a successor, which presumably would be amenable to his suggestions and directions. This right of removal, it will be observed, was not contingent upon the consent and willingness of plaintiff to be removed. It was absolute and complete. There by a consent to a change or revocation of the trusts upon the part of the trustee, if refused, might very effectively be compelled. Consequently it may be concluded that Mr. Astor, from every reasonable and practical standpoint, was in position, at all times prior to his death, to direct and control the disposition to be made of the trust property.

From the care exercised by the settlor to retain this control until the end of his life, and from the fact that at no time, prior to Mr. Astor's death, did the remaindermen have any right to the possession or enjoyment of the property, I have slight hesitancy in holding, not only that the trusts actually took effect in possession and enjoyment as of the settlor's death, but that it was his intention that they should not do so until that event. And as Judge Brewster said in Coolidge v. Nichols (D. C.) 4 F.(2d) 112, 115:

"If a transfer is one to take effect in possession and enjoyment after death, it may be reached under a statute imposing an estate tax. Granting, as we must, that Congress has power to levy a tax upon the net estate of a decedent, it may adopt any reasonable measure of that tax. Admittedly, it is entirely reasonable to measure the tax by the value of the property transmitted by will or by intestate laws, and I do not think it can be said to be unreasonable to measure the tax also by the value of property of which a decedent during his lifetime has made a disposition which partakes of the nature of a testamentary disposition. * * * Whether the transmission be by will, by intestate laws, or by transfers to take effect on or after or in contemplation of death, the transmission bears in each case a reasonable relation to the event of death."

While that decision held that a tax was not applicable to the transfer made by Mrs. Coolidge to her sons, the basis of the ruling was that, prior to the enactment of the statute, she had parted with all *control over* or interest in the property which was sought to be included in the tax computation. Such, too, was the holding in Frew v. Bowers (C. C. A.) 12 F.(2d) 625.

In the case at bar, as has been seen, Mr. Astor retained until the day of his death, complete *power* to control the disposition of the trust estate. That the power of control was real is evidenced by the fact that, "in exercise of the power for this purpose reserved to him by clause eighth of the [original] settlement," he modified the original agreement, as modified by the agreement of December 26, 1916.

[3] Now, when the founder of a trust reserves such power and control over a subject-matter such as is here present, I think it proper to hold that the trusts were, so far as their remainders are concerned, so ambulatory as to render them testamentary in character, and includable within the tax liability of the estate of the decedent whose death gave them the "fullness of finality." Matter of Schmidlapp, 236 N. Y. 278, 140 N. E. 697; McCaughn v. Girard Trust Co. (C. C. A. 3d Circuit) 11 F.(2d) 520; Id. (D. C.) 3 F.(2d) 618; Cleveland Trust Co. v. Routzahn (D. C.) 7 F.(2d) 483; and Stark v. United States, 14 F.(2d) 616, decided May 28, 1926, in the Southern District of Ohio, Western Division. See, also, concurring opinion of Judge Learned Hand in Frew v. Bowers, supra.

[4] There is no question, I believe, but that the retroactive feature of the statute is lawful. Billings v. United States, 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596; United States v. Bennett, 232 U. S. 299, 34 S. Ct. 433, 58 L. Ed. 612; Flint v. Stone-Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, and Brushaber v. Union Pacific Railroad Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713. And, in my opinion, its application to the facts of the present case was proper. As I have heretofore endeavored to point out, Mr. Astor's trusts, although they were set up in an instrument

executed and delivered prior to the enactment of the statute, did not and were not intended to become finalities until his death which occurred after the statute became law. The cessation of the donor's power of control of the trust properties, which occurred after the statute became law, was sufficient to support the imposition of the tax.

[5] Plaintiff's contention that at least $4,-000,000, or £800,000 sterling, of the corpus of the trust was transferred as a debt or surety, and as consideration in money or money's worth, for a marriage settlement, cannot prevail. This provision of the trust agreement, like the others, was wholly ambulatory, and cannot be regarded as having been a fixed, irrevocable charge upon the corpus of the trust.

Due to the fact that the trustee paid the tax assessed, not only against it, but also against the estate of the decedent, and inasmuch as the agreement of December 26, 1916, provided that the trustee should raise and pay out of the capital of the trust fund "all taxes and duties whatsoever payable on or by reason of the death of the grantor or in respect of the said trust fund or any part thereof * * * payable in or under the laws of the state of New York or England or any other country, * * * and whether or not the same shall be primarily payable by any person or persons other than the trustee," it is not necessary to consider what the situation might have been, had the executor of the decedent's estate been unable to pay the taxes from the funds which came into its possession as executor.

In view of what has been said, I feel required to dismiss the complaint, and, without the discussion of the other points of law that have been raised, it will be done.