NORRIS et al. v. GOODCELL, Collector of Internal Revenue.

(District Court, S. D. California. S. D. January 15, 1927.)

No. 2025.

1. Internal revenue ⊙⟶38(12)—Rule of strict construction is applicable to evidence by which it is sought to bring property within taxing statute.

The established rule that, in case of doubt, a taxing statute must be construed strictly against the taxing power and in favor of the citizen, is as applicable to a state of doubt created by the evidence respecting the character of an interest sought to be taxed as to an ambiguity in the law itself.

2. Internal revenue ⊙⟶8(6)—Decedent held to have no interest in real estate which subjected it to estate tax (Revenue Act 1918, § 402, subd. (c), being Comp. St. § 6336¾c).

In 1897 decedent conveyed certain real estate to a daughter, who was about to be married, by absolute deed, reserving no interest in herself in the deed or otherwise. In 1906 she caused suit to be brought against the daughter to have the conveyance declared in trust. The suit was compromised by an agreement that the mother should receive one-half the income from the property during her lifetime and have an equal voice in its management during that time, which right, however, should not be delegated or assigned. Held, that the conveyance was not made in contemplation of or intended to take effect on the death of the mother, and that she had no interest in the property at the time of her death which subjected it to estate tax under Revenue Act 1918, § 402, subd. (c), being Comp. St. § 6336¾c.

At Law. Action by Mary Banning Norris and Lucy Banning Ross against Rex B. Goodcell, Collector of Internal Revenue. Judgment for plaintiffs.

Ward Chapman and L. M. Chapman, both of Los Angeles, Cal., Claude I. Parker, of San Francisco, Cal., and Ralph W. Smith, of Sacramento, Cal., for plaintiffs.

Samuel W. McNabb, U. S. Atty., and Donald Armstrong, Asst. U. S. Atty., both of Los Angeles, Cal. (G. C. Simon, of Los Angeles, Cal., of counsel), for defendant.

JAMES, District Judge. This action is brought to recover the principal sum of $15,-874.12, alleged to have been paid under protest to the defendant collector as an estate tax owing to the government. The tax was paid by Lucy Banning Ross, as executrix of the estate of Mary Hollister Banning, deceased. An additional charge amounting to $2,408.69, as interest, was collected on the same account and the prayer of the complaint includes a demand for the repayment of that sum also. The real interest affected was that of Mary Banning Norris.

The tax charges were made on account of an alleged one-half interest held by the deceased at the time of her death in certain real property. The title to this property at the date of the death of Mrs. Banning was held by plaintiff Mary Banning Norris, a daughter of the deceased, who had received a conveyance of the same from her mother in October, 1897. In that year and month Mrs. Banning, by a grant deed, reciting the consideration to be for "love and affection and the sum of $10," made conveyance of a lot of land comprising approximately 2,800 acres to her daughter Mary, who on the 16th day of November, 1897, was married to Wilt W. Norris    Norris died in 1904.

Early in the year 1906 Mrs. Banning, contending that she had not meant to make an absolute conveyance to her daughter of the land, but that the daughter was to hold the same in trust only; demanded a reconveyance to be made. Mrs. Norris, disputing the contention of her mother that the conveyance was not absolute and unconditional, refused to reconvey, whereupon Mrs. Banning caused her attorney to commence an action to compel the return to her by her daughter of the property. That action did not proceed to trial, but resulted in an agreement being executed by Mrs. Banning and Mrs. Norris, which settled the controversy. The effect of this agreement was to secure to Mrs. Banning one-half of the income derived and to be derived from the land or its proceeds during the time that she might thereafter live.

The Revenue Act of 1918, in that portion which provides for estate taxes, contains the provision which is important to the questions presented by this case. Subdivision (c) of section 402 of the act (St. L. vol. 40, p. 1097 [Comp. St. § 6336¾c]), provides that a tax shall be collected "to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this act), except in case of a bona fide sale for a fair consideration in money or money's worth."

Aside from the question as to whether a complete transfer of the right and title to the property described in the deed of Mrs. Banning to her daughter Mary was effected prior to the death of Mrs. Banning, which is the main point involved, there is present also a question as to the validity of that term of the statute which makes its provisions retroactive. Because of the conclusion which I have reached on the evidence relating to the matter of the extent of the interest conveyed, it will not be important nor necessary to announce any conclusion on the latter proposition. In passing, it may be remarked that there are decisions of District Courts holding that the retroactive feature of the law is valid legislation. One of these cases (and it may be cited as an authority also in agreement with the conclusion made in this case on the main question) is Farmers' Loan & Trust Co. v. Bowers, decided in the United States District Court for the Southern District of New York. See 15 F. (2d) 706.

[1] It is pertinent to observe, before discussing the evidence submitted in this case, that, in considering the enforcement of a taxing measure, such act, in so far as its application may rest in doubt, must be construed strictly against the taxing power and in favor of a citizen. This is a principle so well established as to need no citation of authority to support it. The rule is as applicable to a state of doubt created by the evidence respecting the character of an interest sought to be taxed as it is to an ambiguity in the law itself. And in weighing the testimony it must be remembered too that the transfer of the title to the real estate by Mrs. Banning to her daughter occurred long before the passage of the law creating a federal estate tax. Hence there cannot be cast upon the transaction or the acts of the parties the imputation that there was a design to circumvent the collection of a tax which

might thereafter be attempted to be collected.

[2] There is a little dispute in the testimony as to the circumstances surrounding the transactions had between Mrs. Banning and her daughter Mary, which resulted in the making of the deed and the subsequent modification thereof, if such it may be called. The facts shown, in brief are: Prior to the marriage of Mary Banning Norris and prior to the making of the conveyance on the 8th day of October, 1897, Mr. Norris had been a close family friend and a trusted business adviser of Mrs. Banning. An engagement of marriage existed between the daughter Mary and Norris, but, because of the financial circumstances of the two, the daughter Mary was unwilling to enter upon the marriage. Mrs. Banning was very anxious that the marriage should take place. She was desirous, as she wrote to Mr. Norris—then in New York—that he should return and take charge of her business; that she missed his counsel and friendship. She assured her daughter that, if the marriage was consummated, she would establish her with sufficient property. Accordingly she made the grant deed on the date mentioned, and caused it to be recorded in her daughter's behalf, placing no limiting condition in the deed to affect the transfer of an unqualified fee title, nor did she otherwise by any auxiliary agreement show any intent or desire to qualify the gift as it was completely expressed in the deed. It was shown in evidence that Mrs. Banning was of a masterful and domineering character in all matters affecting her daughters or their affairs, and that she habitually insisted upon the right to direct their conduct and business; that, suiting that habit to the daughter Mary and her property, after the marriage, Mrs. Banning collected the rents from the tenant of the property, providing as she theretofore had, her daughter with money. During a temporary absence of Mrs. Banning, Mary collected the sum of $1,500 rentals due, and Mrs. Banning upon her return resented her daughter's having assumed charge of the business. Notwithstanding that she had told her counsel, in substance, prior thereto, that the transfer of the property was a wedding gift to her daughter, she sought to change the situation after Mary collected the rentals, and then declared that Mary only held the property in trust. Mrs. Banning insisted that her daughter be sued for the purpose of securing a judgment to declare that the unqualified transfer as expressed by her in the deed given to her daughter was in fact something different, and that the property be returned to her. Her attorneys advised against that course, but, upon Mrs. Banning's insistence, did commence such an action. Counsel who acted for Mrs. Norris at the time testified in this case, and stated that Mrs. Norris was positive and insistent that there was not a qualification expressed at any time by Mrs. Banning to the title that she intended to transfer. Her counsel advised her, however, that it would be better, rather than to have litigation with her mother, to reach some agreement satisfactory to the latter. In consequence of this, a written agreement was executed, the effect of which was to secure to Mrs. Banning during her lifetime one-half of the income derived from the real estate. In the compromise agreement it was stated that:

"This instrument shall not be deemed to vest in the party of the first part (Mrs. Banning) any interest in said property which shall be subject to sale or mortgage by her, but her interest shall be confined to a one-half interest in the net income or profits from the said property or of the proceeds of the sale thereof as herein provided."

In another portion of the document it was recited:

"That said party of the first party (Mrs. Banning) now hereby quitclaims and releases to the party of the second part any interest or claim in said property, except the rights to share in the profits and income thereof, and to have an equal voice in the management of the same during her lifetime, as hereinbefore provided, but subject to the right of sale by the party of the second part or to mortgage the same. * * * The right to participate in the management of said property by the party of the first part is a privilege personal to her, and shall not be assigned or delegated to any other person or party whatsoever."

It seems plain that, if we were to consider alone the compromise agreement as expressing all of the meaning and intent of the transaction had between Mrs. Banning and her daughter, no taxable interest under the law as affecting any part of the value of the corpus of the property remained to Mrs. Banning. Her interest only was the right to have paid to her a portion of the income. The voice that she was to have in the management was reserved solely for the purpose of assisting in keeping the income share which she was to receive at a maximum. There have not been recited in the above all of the terms of the compromise agreement, but enough has been stated to show that the document had no effect to reserve any ownership interest in the property or any right

of possession to Mrs. Banning; that, upon the facts as the evidence shows them, the original deed of conveyance was not only in form but was intended to be absolute and unconditional; that this title was unaffected by the compromise of the dispute which Mrs. Banning subsequently caused.

These conclusions require that judgment be entered in favor of the plaintiffs.